IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Vivian Farris, | Case No. 1:17-cv-417 |
| Plaintiff, | Judge Susan J. Dlott |
| v. | |
| U.S. Financial Life Insurance Company, | Order Granting in Part and Denying in Part Defendant's Partial Motion to Dismiss and Motion to Strike |
| Defendant. | |

This matter is before the Court on Defendant U.S. Financial Life Insurance Company's Partial Motion to Dismiss and Motion to Strike, which have been incorporated into one pleading. (Doc. 21.) Plaintiff has filed a Response in Opposition (Doc. 26), to which Defendant has replied (Doc. 28). For the reasons that follow, Defendant's Motion will be granted in part and denied in part.

I. BACKGROUND

A. Facts[1]

Plaintiff Vivian Farris brings this suit against Defendant U.S. Financial Life Insurance Company ("USFL") on behalf of herself and those similarly situated. Defendant USFL is an Ohio corporation. (Doc. 19 at PageID 153, ¶ 12.) Farris is Trustee for the Wirt Adams Yerger, Jr. Legacy Trust ("Trust"). (Id. at ¶ 10.) Yerger formed the Trust to purchase Nova life insurance policy number 0000167447 (the "Policy") from USFL for the benefit of his children and grandchildren. (Id. at ¶¶ 11, 18.) The Trust is organized under the laws of Mississippi. (Id. at ¶ 11.) When it was purchased in 2001, the Policy had a death benefit of $1,750,000, and

---

[1] The Court has drawn the background facts from Plaintiff's Amended Complaint (Doc. 19) unless otherwise indicated.

Yerger made a premium deposit of $297,087. (*Id.* at PageID 154, ¶¶ 19–20.) In 2005, Yerger changed the owner and beneficiary of the Policy to the Trust. (*Id.* at ¶ 21.)

The Policy stated that the cost of insurance ("COI") rate would be calculated based on the insured's sex, attained age, and premium class, and would not exceed the guaranteed maximum rate listed in the Policy. (*Id.* at PageID 158, ¶ 47.) Any changes in the cost of insurance rates apply uniformly to all members of the same class. (*Id.*)

In March 2008, USFL informed the Trust that it was increasing the COI rate of the Policy because the trend in mortality and claims was less favorable than anticipated when the original COI was calculated. (*Id.* at PageID 154, ¶ 22.) The monthly COI rate spiked from $4,664.74 in February 2008 to $5,794.46 in March 2008, which increased the yearly COI rate by over $15,000. (*Id.* at ¶ 23.)

In August 2015, USFL notified the Trust that it was raising the COI rate because it anticipated that the future mortality experience was worse than anticipated when the current schedule of cost of insurance rates was established. (*Id.* at PageID 154–55, ¶ 25.) The monthly COI rate increased from $9,137.48 in February 2016 to $17,029.35 in March 2016, for an annual increase of nearly $80,000. (*Id.* at PageID 155, ¶ 29.)

By June 2016, USFL warned Plaintiff in a letter that if Plaintiff did not pay an additional premium of $22,354.80, the Policy would lapse at the end of a grace period due to the policy account value being depleted by the COI rate increase. (*Id.* at ¶ 31.) Yerger contacted USFL and was informed that he also needed to pay $18,000 per month in additional premiums in order to keep the Policy in force. (*Id.* at ¶ 32.) Plaintiff was required to make increasing premium payments to avoid allowing the Policy to lapse. (*Id.* at PageID 155–56, ¶¶ 31–35.) Plaintiff made approximately $151,636.80 in premium payments in 2016 to keep the Policy in force –

over $50,000 more in premiums than Plaintiff paid in 2015. (*Id.* at ¶ 34.) By February 15, 2017, the Policy account was reduced to $17,913.19 and is expected to be at $0 unless Plaintiff continues to make additional premium payments. (*Id.* at PageID 156, ¶ 35.) The monthly COI rate continues to rise and is approximately $17,334.13 per month, nearly double the COI rate paid the previous policy year. (*Id.* at ¶ 35.) Plaintiff claims that by dramatically increasing the COI rate, USFL is "raiding" the Policy account and attempting to force Plaintiff's Policy to lapse. (*Id.* at ¶ 36.)

Plaintiff alleges that USFL has dramatically increased the COI rate on policy holders of the Nova and SuperNova UL policies. The COI rate increases on these policies have been drastic and unprecedented, ranging from six to forty percent depending on the policy block. (*Id.* at ¶ 38.) Plaintiff claims that these increases in COI rates were not based on changes in mortality experience, but, rather, were a way for USFL to find new cash for the company, rid itself of near-term liabilities, and recoup prior losses. (*Id.* at ¶ 39.)

### B. Procedural History

Plaintiff initiated this lawsuit on June 19, 2017 on behalf of herself and those similarly situated. (Doc. 1.) In the First Amended Class Action Complaint ("Amended Complaint"), Plaintiff asserts six claims against USFL: breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, conversion, fraudulent misrepresentation, and fraudulent suppression. (Doc. 19.) Defendant moves to dismiss all claims but breach of contract and to strike immaterial and impertinent allegations from the Amended Complaint. (Doc. 21.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). For a fraud claim to withstand a motion to dismiss, a complaint must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

In ruling on a motion to dismiss, the Court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) (citing Fed. R. Civ. P. 10(c)). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

4

### B. Rule 12(f)

A district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

### III. ANALYSIS

The Court will first consider Defendant's Partial Motion to Dismiss followed by Defendant's Motion to Strike.

### A. Motion to Dismiss

Defendant alleges that Plaintiff fails to state plausible claims for unjust enrichment, conversion, restitution of premiums paid for breach of the covenant of good faith and fair dealing, and fraud. Before considering the merits of Defendant's arguments, the Court will first address the issue of choice of law. A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Sec. Ins. Co. v. Kevin Tucker & Assocs.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (citing *Anderson Dev. Co. v. Travelers Indem. Co.*, 49 F.3d 1128, 1131 (6th Cir. 1995)). Thus, Ohio choice-of-law provisions apply here. Ohio has adopted Sections 187 and 188 of the Restatement (Second) of Conflict of Laws, which instructs courts to generally respect choice-of-law provisions.[2] *Wise v. Zwicker & Assoc., P.C.*, 780 F.3d 710, 714–

---

[2] As set forth in *Wise*:
>The court should apply the choice-of-law provision unless either[:]
>(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

15 (6th Cir. 2015), *cert. den'd*, 136 S. Ct. 793 (2016); *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (Under Ohio law, the choice-of-law principles "strongly favor upholding the chosen law of the contracting parties.").

The parties agree that pursuant to the parties' choice-of-law provision in the Policy, Mississippi law should be applied when there is a conflict of laws.[3] (Doc. 21 at PageID 245; Doc. 26. at PageID 282.) Under a section labeled "Conformity with State Laws," the Policy provides that "[t]his policy is subject to the laws of the state where the application was signed." (Policy, Doc. 19-3 at PageID 232.) The application[4] to the Policy states that it was signed in the city of "Jackson" in the state of "MS." (Doc. 21 at PageID 264.) Accordingly, the Court will apply Mississippi law in the event of a conflict.

### 1. Unjust Enrichment

Defendant moves to dismiss Plaintiff's unjust enrichment claim, arguing because a contract governs the dispute the quasi-contractual claim of unjust enrichment is not available. Plaintiff argues that the claim is pled in the alternative, and may be maintained in addition to the breach of contract claim because there is evidence of fraud.

---

*Id.* (citing Restatement (Second) of Conflict of Laws § 187(2)). Under the latter exception, the choice of law provision should not be enforced if: "(1) it would be contrary to a fundamental policy of the state whose law would otherwise be applied; and (2) the state whose law would otherwise be applied has a materially greater interest in the particular issue under consideration than the state named in the choice of law provision." *Id.* (citing *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 924 (6th Cir. 2006)). The Court should then evaluate whether the state whose law would otherwise be applied has a material greater interest in the determination than the selected forum. *Id.*

[3] The parties disagree, however, over which claims a conflict exists.

[4] Defendant provided a copy of the Application. (Doc. 21.) Although not attached by the Plaintiff to its Amended Complaint, the Court finds that it was incorporated and thus may be considered without converting the dismissal motion into one for summary judgment. *Campbell*, 611 F. App'x at 292 (documents a defendant introduces into the pleadings that the plaintiff does not may be considered as part of the pleadings if they are referred to in the complaint and central to the claim) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

Under Mississippi law, "unjust enrichment applies only when a legal contract is nonexistent." *Willis v. Rehab Solutions, PLLC*, 82 So. 3d 583, 588 (Miss. 2012). Ohio law generally follows suit, *Earhart Petroleum, Inc. v. Yowell Transp.*, No. 14665, 1995 WL 300728, at *5 (Ohio Ct. App. May 17, 1995), but courts have allowed a plaintiff to plead unjust enrichment in the alternative to a breach of contract where there is a dispute as to the existence or enforcement of a contract or if there is evidence of fraud, bad faith, or illegality. *Rose v. Friendly Fin. Corp.*, No. 2:15-cv-1032, 2016 WL 98597, at *13 (S.D. Ohio Jan. 8, 2016) (denying judgment on the pleadings as to unjust enrichment claim where there was evidence of fraud, bad faith, or illegality in connection with existing contract); *Astar Abatement, Inc. v. Cincinnati City School Dist. Bd. of Educ.*, No. 1:11-cv-587, 2012 WL 481799, at *5 (S.D. Ohio Feb. 14, 2012) (declining to dismiss unjust enrichment where there was a dispute over enforceability of contract).

In arguing that the unjust enrichment claim should survive, Plaintiff invokes only Ohio law. The Court has been unable to locate any Fifth Circuit or Mississippi case in which an unjust enrichment claim under Mississippi law was permitted to proceed despite the existence of a contract because there was evidence of fraud, bad faith, or illegality. The parties did not cite any case law supporting such an exception. The Supreme Court of Mississippi made clear in *Willis* that "our law is clear on unjust enrichment—it is based upon a mistaken payment, and it applies only where no legal contract exists." 82 So. D at 588. The "clear" law of Mississippi governs in the event of a conflict. As a contract governs the dispute, an unjust enrichment claim is not tenable. This claim is appropriately dismissed.

## 2. Conversion

In alleging that USFL converted Plaintiff's money, Plaintiff claims that she acquired significant cash values as part of her universal life insurance policy, and those values were specific and identifiable personal property. (Doc. 19 at PageID 207, ¶¶ 245–46.) USFL caused money to be withdrawn from Plaintiff and class members' cash value accounts and deposited into USFL and/or AXA accounts. (*Id.* at PageID 208, ¶ 247.) In so doing, USFL exerted ownership over Plaintiff's personal property and denied her rights to it. (*Id.* at ¶ 248.)

Defendant moves to dismiss Plaintiff's conversion claim on the basis that money is intangible property that may not be converted. Plaintiff counters that her claim is viable because the money in this case was in an identifiable fund maintained for a specific purpose. Ohio and Mississippi are in accord in that money cannot be converted unless it is identifiable and there is an obligation to deliver the specific money in question. *Dice v. White Family Cos., Inc.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007); *Blades v. Countrywide Home Loans, Inc.*, No. 1:06-cv-1000, 2007 WL 2746678, at *4 (S.D. Miss. Sept. 18, 2007). In *Blades*, for example, the Court, interpreting Mississippi law, allowed a claim for conversion of insurance premiums to go forward where the plaintiff asserted that premiums for the insurance policy were wrongfully taken from an escrow account, which were funds set aside in an account for a specific purpose. *Id.* at 2007 WL 2746678, at *4. Similarly, under Ohio law, money may only be the subject of a conversion claim where:

> the money involved is 'earmarked' or is specific money capable of identification, *e.g.*, money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.

8

*Gascho v. Global Fitness Holdings, Inc.*, 863 F. Supp. 2d 677, 700 (citing *Haul Transport of VA, Inc. v. Morgan*, Case No. 14859, 1995 WL 328995 (Ohio Ct. App. 1995) (internal citations omitted)).

The parties dispute whether the money at the center of Plaintiff's claim was held in a specific, identifiable account. Plaintiff alleges that it has identified a specific account by pleading that "USFL caused money to be withdrawn from the Plaintiff's and class members' cash value accounts and deposited into USFL and/or AXA accounts." (Doc. 19 at PageID 208, ¶ 248.) Plaintiff argues that the policy account value is a specific, identifiable fund tied to Plaintiff's policy number, composed of identifiable premium payments that were converted through Defendant's COI rate increase targeting the funds in its account. Defendant disagrees, and argues that the "policy account value" is a contractual right based on the Policy terms, not an identified account; thus, there can be no conversion. Rather, pursuant to page 11 of the Policy, the "Policy Value" is calculated at any point in time.

The Court defers to the liberal pleading standard of Rule 8 and Plaintiff's allegation identifying a specific account. Discovery will reveal whether this account is sequestered and concerns specific, identifiable funds, as opposed to a general amount due. However, the allegation as pled is sufficient to state a claim. It is premature for the Court to delve into the merits of this dispute at this stage. Accordingly, the conversion claim will not be dismissed.

### 3. Breach of the Covenant of Good Faith and Fair Dealing

Defendant moves to dismiss or to strike Plaintiff's claim for breach of the covenant of good faith and fair dealing on the basis that Plaintiff seeks restitution.[5] Defendant argues that although Plaintiff amended her Complaint to remove the specific request for "restitution," her

---

[5] Defendant also argues that the claim should be dismissed if Ohio law is applied.

9

request for "damages for all premiums paid" is essentially the same. (Doc. 19 at PageID 206, ¶ 233.)

It is undisputed that Mississippi law governs this claim and does not recognize restitution as an available remedy. *Cenac v. Murry*, 609 So. 2d 1257, 1273 (Miss. 1992) (the appropriate remedy for breach of the covenant of good faith is the measure of expectancy-type damages); *Singleton v. Stegall*, 580 So. 2d 1242, 1246–47 (Miss. 1991) (construing request for money back as a request for restitution). Plaintiff responds that her prayer for relief does not include restitution:

> [D]amages include, but are not limited to, the diminished value in Plaintiff's and Class members' life insurance policies; the improper increased COI premiums; and any damages suffered by Plaintiff and Class members from not having the opportunity to pursue and secure alternatives to the diminished life insurance policy at issue that occurred due to their reliance on the representations of financial solubility of the life insurance policy by USFL. Plaintiff and Class members are entitled to damages for all premiums paid or, in the alternative, the unlawful and artificially inflated COI charges that USFL has paid itself from the policy's cash value. Plaintiff and Class members are entitled to punitive damages and all other relief this Court orders in the interest of justice whether in law or equity.

(Doc. 19 at PageID 205–06, ¶ 233.) Defendant argues that expectancy damages would be the difference between the COI rate properly charged and the COI rate that was allegedly improperly charged—the purported overpayment of the COI rate, not restitution of all premiums paid from 2015 forward.

The Court finds that at this stage, Plaintiff has sufficiently pled expectancy damages. The parties may present arguments to the Court about how those expectancy damages are properly calculated when the Court rules on the merits. Accordingly, this claim will not be dismissed, nor will the Court strike Plaintiff's prayer for relief.

### 4. Fraudulent Misrepresentation and Fraudulent Suppression

Plaintiff asserts a claim for each fraudulent misrepresentation and fraudulent suppression. The two counts raise nearly identical allegations but are the inverses of one another. As such, the Court will analyze them together.

As to fraudulent misrepresentation, Plaintiff claims that USFL falsely stated to Plaintiff and class members that USFL was justifiably and lawfully increasing the COI rate charged to their universal life policies based on "future mortality expectations" and falsely represented to Plaintiff and class members that it was a well-funded company, operating efficiently, increasing profits and cash flows, and reducing costs. Those statements were false and made with the intention of defrauding Plaintiff and class members, who relied upon them by continuing to pay premiums and not obtaining alternative life insurance policies. (Doc. 19 at PageID 208–09, ¶¶ 250–57.) On the other hand, Plaintiff also asserts in a fraudulent suppression claim that USFL suppressed that it was increasing the COI rate to find new cash with which to fund the company, rid itself of near-term liabilities because it is financially unstable, and recoup past losses. Plaintiff and class members were induced by USFL's statements by continuing to pay premiums and not obtaining alternative life insurance policies. (*Id.* at PageID 209–11, ¶¶ 258–66.)

In order to state a claim for common law fraud under Mississippi law,[6] a plaintiff must allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) her intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) reliance upon its truth; (8) a right to rely on the representation; and (9) an injury proximately caused by the

---

[6] The Court applies Mississippi law to the fraud claims due to a conflict of law, discussed *infra*.

reliance on the representation. *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007) (citing *McLeod v. Jackson*, 829 So.2d 722, 726 (¶ 15) (Miss. Ct. App. 2002)).

Under Mississippi law, "an independent tort does not arise in circumstances in which the tort claim is based solely on a breach of a contractual duty." *First Tr. Nat. Ass'n v. First Nat. Bank of Commerce*, 220 F.3d 331, 335 (5th Cir. 2000).[7] Further, also under Mississippi law, "a duty to disclose may exist where one voluntarily undertakes to speak but fails to prevent his or her words from being misleading, or where one party has knowledge of material facts to which the other party does not have access." *Shelter Mut. Ins. Co. v. Brown*, 345 F. Supp. 2d 645, 652 (S.D. Miss. 2004).

"In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted." *Taylor*, 954 So.2d at 1049 (citing *Langston v. Bigelow*, 820 So.2d 752, 756 (Miss. 2002)); *see also Frye v. Am. Gen. Fin., Inc.*, 307 F.Supp.2d 836, 842 (S.D. Miss. 2004). "This duty generally arises only where there is a fiduciary relationship between the parties." *Id.* (citing *Langston*, 820 So.2d at 756; *Frye*, 307 F.Supp.2d at 842.)[8] "The purchase of insurance is deemed to be an arms length transaction, and accordingly no fiduciary duty arises." *Id.* (citing *Langston*, 820 So.2d at 756). "Under Mississippi law, there is no fiduciary relationship or duty between an insurance company and its insured in a first party insurance contract." *Id.* (quoting *Langston*, 820 So.2d at 756)).

"A duty to disclose by a non-fiduciary may also arise when he originally provided incorrect or incomplete information, which he knows may be misleading." *Marsh v. Wallace*,

---

[7] Ohio law is in accord. *ITS Fin., LLC v. Advent Fin. Servs., LLC*, 823 F. Supp. 2d 772, 780 (S.D. Ohio 2011) (A tort claim cannot be based on the same actions as those upon which a claim of contract breach, unless a duty is owed and breached separate from the duty owed pursuant to the contract).

[8] The parties have not cited an analogous requirement under Ohio law.

666 F. Supp. 2d 651, 665 (S.D. Miss. 2009) (relying upon *Welsh v. Mounger*, 883 So. 2d 46, 49 (Miss. 2004) (recognizing duty to disclose by non-fiduciary in the context of a business transaction)); *see also Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564, 568 (Miss. 2008) ("The duty to disclose is based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to the suppression of a material fact which should have been disclosed and is, in effect, fraud.") (relying upon *Welsh*). However, this exception to the general rule arises in the narrow context of disclosure related to a business transaction prior to the transaction being consummated. *Id.* A "duty to disclose may exist where one voluntarily undertakes to speak but fails to prevent his or her words from being misleading, or where one party has knowledge of material facts to which the other party does not have access." *Shelter Mutual Ins. Co. v. Brown*, 345 F. Supp. 2d 645, 652 (S.D. Miss. 2004).

### 1. Misrepresentation/Concealment of Reasons for 2015 COI Rate Increase

The Court will first consider whether Plaintiff properly asserts a claim for fraudulent misrepresentation and/or suppression on the basis that USFL misrepresented the 2015 COI rate increase based on "future mortality expectations" while concealing the reasons for the increase. Specifically, the Trust was informed in August 2015 that USFL would increase the COI rate on the Policy because "[w]e anticipate the future mortality experience for this product to be worse than was anticipated when the current schedule of cost of insurance rates was established." (Doc. 19 at PageID 154–55, ¶ 25.) AXA has claimed in both its letters to policyholders and its 2015–2016 and 2016–2017 policy annual statements that the only alleged basis for the increase was unfavorable future mortality experience. Both annual statements received by Plaintiff stated: "U.S. Financial Life anticipates the future mortality experience for this product to be

13

worse than was anticipated when the current schedule of cost of insurance rates was established." (*Id.* at PageID 159, ¶ 50.)

The parties dispute whether Defendant owed and breached a duty separate and apart from the contract. Plaintiff argues that Defendant owed a duty, independent of the contract, to provide Plaintiff and class members with truthful information when it chose to speak about the reasons for the increase. Plaintiff alleges Defendant misrepresented the reasons for the COI rate increase in a 2015 letter notifying them of the increase (though such a letter was not required by the Policy) and claiming that the increase was justifiable, lawful, and based on worse-than-expected future mortality expectations. (Doc. 19 at PageID 158–59, 208 at ¶¶ 49–50, 251.) The letter concealed the actual reasons for the increase, which, according to Plaintiff, included funding the company with new cash, ridding itself of near-term liabilities, and recouping prior losses. (*Id.* at PageID 152, 210 at ¶¶ 9, 261–62.) In addition, the company sent out annual policy statements in 2015–2016 and 2016–2017 stating that the only basis for the increase was unfavorable future mortality experience. (*Id.* at PageID 159, ¶ 50.) Defendant argues that Plaintiff may not assert a fraud claim based on such facts, because Plaintiff fails to allege a breach of a duty separate from the Policy and the allegations are not well pled under Rule 9. It also contends that a concealment claim on these facts fail, as Plaintiff has not alleged a breach of a fiduciary duty.

The Court has reviewed the relevant Mississippi law and is unable to find that Defendant owed it a duty separate and apart from the contract. The cases upon which Plaintiff relies for a duty are distinguishable in that they rely upon cases in which a duty was owed in the context of a business transaction prior to that transaction being effectuated. Plaintiff has not cited any case law in which a duty to disclose was found in analogous circumstances. However, the Court will allow the claim to be pled in the alternative, as requested by Plaintiff. *See U.S. ex rel. Roby v.*

*Boeing Co.*, 184 F.R.D. 107, 112 (S.D. Ohio 1998). As such, the fraudulent misrepresentation and suppression claim based on the facts above may proceed as an alternative cause of action.

### 2. Misrepresentation/Concealment of Financial Insolvency

The Court will now turn to Plaintiff's allegations that Defendant misrepresented and/or concealed the state of its financial solvency. Defendant argues Plaintiff's allegations that it misrepresented and/or omitted facts about its financial health are not well-pleaded and that Plaintiff lacks standing as a policyholder to bring such claims. Specifically, Plaintiff has not identified what was omitted, what should have been included, and the content of the omission and manner in which the omission was misleading. Defendant argues that Plaintiff lacks standing to bring the concealment claim about financial solvency, because Defendant has not failed to provide her with the Policy death benefit, and Plaintiff lacks standing to make claims about perceived financial mismanagement as a policyholder, rather than a shareholder. *See Ross v. AXA Equitable Life Ins. Co.*, 680 F. App'x 41 (2d Cir. 2007) (policyholder lacked standing to assert claims where there was no injury in fact traceable to the alleged misconduct).

In response, Plaintiff identifies four "statements" through which Defendant purportedly concealed and/or misrepresented material information about its financial health: (1) the August 11, 2015 letter notifying policyholders of a COI rate increase; (2) 2015–2016 and 2016–2017 policy annual statements; (3) Defendant's website; and (4) Defendant's corporate statements. (Doc 19 at ¶¶ 25, 49–50, 80, 99–102, 252, 261–62.) The Court has already addressed the first two statements in its analysis above. As to the last two statements, the Court has reviewed the allegations and finds them too vague and ambiguous as pled to establish a misrepresentation claim. As Defendant points out, although Plaintiff references the website and company's viability, the Amended Complaint is silent as to whether Plaintiff individually read these

statements and what was concealed from these statements that would have made a material difference to Plaintiff in continuing her life insurance contract with USFL.

In sum, the fraud claim based on alleged financial insolvency and mismanagement are appropriately dismissed.

### 5. Statute of Limitations

Defendant argues that Plaintiff's allegations regarding the 2008 COI rate increase is barred by the statute of limitations. Plaintiff concedes she is not making a legal claim as to the 2008 increase. Accordingly, this issue is moot.

### B. Motion to Strike

Defendant moves to strike immaterial and impertinent allegations from the Amended Complaint, which is over sixty pages. Defendant argues that discussions related to the 2008 increase and matters not directly related to the proper calculation of COI rates are ancillary and immaterial to the case. Plaintiff maintains that this information is relevant background information to explain the reinsurance industry and to show Defendant's pattern of conduct.

Under Rule 12(f), the Court may strike from any pleading "redundant, immaterial, impertinent, or scandalous matter." The decision to strike is within the Court's discretion, but requests to strike are disfavored and typically denied unless the allegations at issue do not relate to the subject matter of the action and may cause significant prejudice to one or more of the parties. *New Day Farms, LLC v. Bd. of Trs. of York Twp.*, No. 2:08-cv-107, 2009 WL 1652126, at *3 (S.D. Ohio June 10, 2009) (citing 5C <u>Wright & Miller Federal Practice & Procedure</u> § 1382 (3d ed. 2009)). The Amended Complaint is not a model of brevity. However, Defendant has not demonstrated that Plaintiff's allegations fail to relate to the subject matter of the case or would

cause significant prejudice to one of the parties. Therefore, the Court denies Defendant's request to strike.

## IV. CONCLUSION

For the reasons set forth herein, USFL's Partial Motion to Dismiss is granted in part and denied in part, and USFL's Motion to Strike is denied. The claims for unjust enrichment and fraudulent misrepresentation/suppression based upon financial insolvency are dismissed. The remaining claims of conversion, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation/suppression based upon the 2015 COI rate increase may proceed.[9] The request to strike is denied.

**IT IS SO ORDERED.**

*Susan J. Dlott*
Judge Susan J. Dlott
United States District Court

---

[9] The breach of contract claim, which was not subject to Defendant's Motion to Dismiss, also remains pending.