# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| VIVIAN FARRIS; trustee for WIRT ADAMS YERGER, JR. LEGACY TRUST; individually and on behalf of all those similarly situated, §<br>§<br>§<br>§<br>§ | |
| **Plaintiff,** § | |
| § | **Case No. 1:17-cv-417** |
| **v.** § | |
| § | **Judge: Matthew W. McFarland** |
| **U.S. FINANCIAL LIFE INSURANCE COMPANY,** §<br>§ | |
| § | |
| **Defendant,** § | |

## DEFENDANT U.S. FINANCIAL LIFE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Respectfully submitted,

*Of Counsel*:
MCDOWELL HETHERINGTON LLP
David T. McDowell*
Diane Wizig *
William B. Thomas *
1001 Fannin, Suite 2700
Houston, Texas 77006
Telephone: (713) 337-5580
Telecopy: (713) 337-8850


*admitted *pro hac vice*

*/s/Matthew A. Rich*
Matthew A. Rich (0077995)
KATZ, TELLER, BRANT & HILD
255 East Fifth Street, Suite 2400
Cincinnati, OH 45220
Telephone: (513) 721-4532
Facsimile: (513) 762-0075
mrich@katzteller.com

*Trial Attorney for U.S. Financial Life Insurance Company*

*Signed by William B. Thomas with permission

# TABLE OF CONTENTS

I.   SUMMARY OF THE ARGUMENT ................................................................................. 1

II.  FACTUAL BACKGROUND .......................................................................................... 2

    A.  The Policy expressly permits USFL to increase the cost of insurance rates. .................... 2

    B.  USFL increased COI rates in 2008 based on deteriorating mortality expectations. ........... 4

    C.  2015 COI Rate increase was permissible pursuant to plain language in the policy. .......... 4

III. PROCEDURAL BACKGROUND .................................................................................... 5

    A.  Plaintiff alleges that the 2015 COI Rate Increase was a "money grab." ........................... 5

    B.  The Court largely granted USFL's Motion to Dismiss. ..................................................... 6

    C.  Lacking evidence of a "money grab," Plaintiff pivots and bases her class certification
        motion on irrelevant and unsupported allegations of claims not found in the FAC. .......... 6

IV.  LEGAL STANDARD ...................................................................................................... 8

    A.  There is no "preference for class certification" and certification is not the "only
        way." .................................................................................................................................. 8

    B.  The Court's "rigorous analysis" must scrutinize each claim individually. ......................... 9

    C.  Plaintiff must demonstrate that each claim satisfies Rule 23(a) and (b)(3). ..................... 10

V.   ARGUMENT ................................................................................................................. 10

    A.  Class certification must be denied because Plaintiff's Motion is based on unpleaded
        and undisclosed allegations. ............................................................................................ 10

    B.  Plaintiff's new allegations are time-barred, precluding certification. ............................... 12

    C.  Plaintiff's breach of contract claim cannot be certified because Plaintiff's new
        allegations are not a basis for breach and fail under Rule 23's rigorous analysis. ........... 14

        1)  Plaintiff's Pre-Contractual theories do not assert a breach of contract and fall
            short of satisfying Rule 23. ...................................................................................... 14

            a)  Not a breach: Plaintiff's Pre-Contractual theories pre-date the policy
                contract and are not a basis to claim breach. .................................................. 15

            b)  Commonality: Pre-Contractual theories are not supported by common
                evidence. ......................................................................................................... 16

            c)  Predominance: Determining whether any class members were harmed by
                Pre-Contractual theories requires an individualized inquiry.. ......................... 18

            d)  Numerosity/Ascertainability: Without knowing which policyholders are
                class members, Plaintiff fails to ascertain and demonstrate numerosity. ....... 19

            e)  Adequate Class Representative/Article III Standing: Without evidence
                she was harmed, Plaintiff lacks standing, making her an inadequate
                representative. ................................................................................................. 19

        2)  Plaintiff's Actuarial Criticisms do not serve as a basis for a breach of contract
            claim and fail class certification under Rule 23. ...................................................... 21

a) The use of different mortality tables: Mortality tables are not mentioned in the contract, and Plaintiff offers no evidence of harm. ............................... 22

b) USFL's regulatory filings: Regulatory filings are not part of the contract, and Plaintiff never saw or relied on them. ...................................... 22

c) Modeling using one single age and sex: Plaintiff provides no such evidence; had it done so, Plaintiff would have benefited, making her an inadequate representative. ................................................................. 23

d) Testing a range of increases: Testing methodology is not in the contract, and Plaintiff shows no harm. ......................................................... 24

e) Recouping past losses: Plaintiff offers no evidence that the COI Rate Increase recouped past losses or that doing so breached the contract; without evidence of harm, she is atypical and an inadequate representative. ........................................................................................ 24

f) USFL Methodology, "component approach" versus an "integrated approach": Plaintiff's actuarial methodology argument is not based in the policy, unsupported by the evidence, and could not have harmed Plaintiff. .. 26

3) Plaintiff's "Impermissible Factor" is not based on common—or any—evidence. ........................................................................................ 27

D. Plaintiff's non-contractual claims cannot be certified because they rely on predominating, individualized issues of fact and law ...................................... 28

1) Breach of implied covenant of good faith and fair dealing claims vary across jurisdictions and inject individualized fact issues that predominate making class certification improper. ..................................................... 29

a) Breach of the implied covenant of good faith and fair dealings claim cannot be certified under a choice of law analysis. ......................... 29

b) The breach of good faith and fair dealing claim raises individualized fact issues, defeating class certification. .......................................... 30

2) Conversion claims vary across jurisdictions and inject individualized fact issues that predominate making class certification improper. ................................. 31

3) Plaintiff's fraud claim requires application of differing state laws and inherently devolves into individualized factual inquiries contrary to Rule 23(b)(3). ............................................................................................... 32

E. Plaintiff fails to demonstrate that her remedies are certifiable. ........................................ 34

1) Plaintiff's damages model does not satisfy her burden under 23(b)(3), and Plaintiff fails to demonstrate how any class award could be administered. ........... 34

2) A declaratory/injunctive relief class under Rule 23(b)(2) is improper because Plaintiff seeks monetary damages and submits no evidence as to an injunction..... 35

VI. CONCLUSION.................................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................ 34

*Alleman v. State Farm Life Ins. Co.*,
508 F. Supp. 2d 452 (W.D. Pa. 2007) ............................................... 15, 22, 24, 25

*Amchem Products, Inc. v. Windsor*,
524 U.S. 591 (1997) ............................................................................. 18

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*,
554 F.3d 525 (5th Cir. 2008) .................................................................. 10

*Archer v. Creel*,
217 So. 3d 690 (Miss. Ct. App. 2016) .................................................... 13

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) ................................................................ 30

*Barasch v. Estate Info. Servs., LLC*,
No. 07-CV-1693 NGG/MDG, 2009 WL 2900261 (E.D.N.Y. Sept. 3, 2009) ....................... 22

*Berni v. Barilla S.P.A.*,
964 F.3d 141 (2d Cir. 2020) ................................................................... 35

*Boyer v. Diversified Consultants, Inc.*,
306 F.R.D. 536 (E.D. Mich. 2015) ......................................................... 18

*Butler v. Sterling, Inc.*,
No. 98–3223, 2000 WL 353502 (6th Cir. Mar.31, 2000) ........................................ 13

*Casa Orlando Apts., Ltd. v. Fannie Mae*,
624 F.3d 185 (5th Cir. 2010) .................................................................. 32

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ................................................................... 32

*Castellanos v. Worldwide Distribution Sys. USA, LLC*,
No. 14-CV-12609, 2015 WL 13862060 (E.D. Mich. Aug. 19, 2015) ............................ 19, 25

*Chesner v. Stewart Title Guar. Co.*,
No. 1:06CV00476, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008) ................................. 32

*CitiFinancial Mortg. Co. v. Washington*,
967 So. 2d 16 (Miss. 2007) ................................................................... 13

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ............................................................................. 34

*Couch v. Wilco Life Ins. Co.*,
363 F. Supp. 3d 886 (S.D. Ind. 2019) ...................................................... 27

*Covington County Bank v. Magee*,
177 So. 3d 826 (Miss. 2015) ................................................................. 13

*Daffin v. Ford Motor Co.*,
No. C-1-00-458, 2004 WL 5705647 (S.D. Ohio July 15, 2004) ........................................... 35

*Daffin v. Ford Motor Co.*,
458 F.3d 549 (6th Cir. 2006) ............................................................................................. 35

*Dallas Gay All., Inc. v. Dallas County Hosp. Dist.*,
719 F. Supp. 1380 (N.D. Tex. 1989) ................................................................................. 25

*Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*,
No. 15-24375-CIV, 2016 WL 8542540 (S.D. Fla. Dec. 1, 2016) ........................................ 14

*Donald Marshall Berlin v. Bank of Am., N.A.*,
101 F. Supp. 3d 1 (D.D.C. 2015) ....................................................................................... 29

*Durand v. Hanover Ins. Group, Inc.*,
No. 3:07-CV-00130-HBB, 2018 WL 1948098 (W.D. Ky. Apr. 25, 2018) ........................... 10

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) ................................................................................................ 8

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) ............................................................................................. 19

*Feller v. Transamerica Life Ins. Co.*,
No. 2:16-CV-01378-CAS-AJW, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) .................... 9

*Fleisher v. Phoenix Life Ins. Co.*,
No. 1:11-CV-8405 (CM), 2013 WL 12224042 (S.D.N.Y. July 12, 2013) ............................. 9

*Fleisher v. Phoenix Life Ins. Co.*,
18 F. Supp. 3d 456 (S.D.N.Y. 2014) .................................................................................. 24

*Food Lion, LLC v. Dean Foods Co.*,
312 F.R.D. 472 (E.D. Tenn. 2016) ................................................................................ 18, 25

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
301 F.3d 329 (5th Cir. 2002) ................................................................... 20, 21, 23, 26

*Gibbs Properties Corp. v. CIGNA Corp.*,
196 F.R.D. 430 (M.D. Fla. 2000) ....................................................................................... 18

*Gustafson v. BAC Home Loans Servicing, LP*,
294 F.R.D. 529 (C.D. Cal. 2013) ................................................................................. 29, 30

*Hale v. Enerco Group, Inc.*,
288 F.R.D. 139 (N.D. Ohio 2012) ..................................................................................... 33

*Housing Auth., City of Laurel v. Gatlin*,
738 So. 2d 249 (Miss. Ct. App. 1998) .......................................................................... 21, 26

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................................. 9, 10, 32

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ................................................................................... 23

*In re Facebook, Inc., PPC Advert. Litig.*,
 282 F.R.D. 446 (N.D. Cal. 2012) ........................................................................ 14

*In re Facebook, Inc., PPC Advert. Litig.*,
 588 F. App'x 733 (9th Cir. 2014) ........................................................................ 14

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 334 F.R.D. 96 (E.D. Mich. 2019) .......................................................................... 9

*In re Jackson Nat. Life Ins. Co. Premium Litig.*,
 183 F.R.D. 217 (W.D. Mich. 1998) ............................................................... 10, 28

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
 No. 05CV633 JLS CAB, 2008 WL 8929013 (S.D. Cal. July 8, 2008) ................... 14

*J.A.M. Promotions, Inc. v. Tunica County Arena*,
 No. 2:09CV016-P-S, 2011 WL 2261300 (N.D. Miss. June 6, 2011) ..................... 15

*J.A.M. Promotions, Inc. v. Tunica County Arena*,
 470 F. App'x 224 (5th Cir. 2012) ........................................................................ 15

*Jenkins v. Macatawa Bank Corp.*,
 No. 1:03-CV-321, 2006 WL 3253305 (W.D. Mich. Nov. 9, 2006) ......................... 9

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*,
 No. 02-80381-CIV., 2003 WL 21146714 (S.D. Fla. May 6, 2003) ....................... 31

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*,
 No. 02-80381-CIV, 2003 WL 22097937 (S.D. Fla. Sept. 2, 2003) ...................... 31

*Jones v. Mississippi Institutions of Higher Learning*,
 264 So. 3d 9 (Miss. Ct. App. 2018) ............................................................... 29, 30

*Junod v. NWP Services Co.*,
 No. 8:14-cv-1734-JLS, 2016 WL 6306030 (C.D. Cal. July 18, 2016) .............. 10, 11

*Kendall v. Phoenix Home Health Care Servs. Ltd.*,
 No. 2:15-CV-3009, 2016 WL 5871506 (S.D. Ohio Oct. 7, 2016) ......................... 29

*Kondash v. Kia Motors America, Inc.*,
 No. 1:15-CV-506, 2020 WL 5816228 (S.D. Ohio Sept. 30, 2020) ...... 9, 16, 26, 28

*Kramer v. Toyota Motor Corp.*,
 668 F. App'x 765 (9th Cir. 2016) ........................................................................ 16

*Lane v. Wells Fargo Bank, N.A.*,
 No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013) ................... 30

*Mai Nhia Thao v. Midland Nat. Life Ins. Co.*,
 549 F. App'x 534 (7th Cir. 2013) ........................................................................ 27

*Maness v. K & A Enters. of Miss., LLC*,
 250 So. 3d 402 (Miss. 2018) .............................................................................. 23

*Mettke v. Hewlett Packard Co.*,
 No. 2:11-CV-410, 2012 WL 13027065 (S.D. Ohio Aug. 15, 2012) ..................... 15

*Mielo v. Steak 'n Shake Operations, Inc.*,
   897 F.3d 467 (3rd Cir. 2018) ........................................................ 8

*Molina v. Roskam Baking Co.*,
   No. 1:09-CV-475, 2011 WL 5979087 (W.D. Mich. 2011) ................. 13

*Moross Ltd. P'ship v. Fleckenstein Capital, Inc.*,
   466 F.3d 508 (6th Cir. 2006) ........................................................ 13

*Mullen v. Nationwide Mut. Ins. Co.*,
   No. 1:11CV351-KS-MTP, 2013 WL 228074 (S.D. Miss. Jan. 18, 2013) ............ 30

*Norem v. Lincoln Ben. Life Co.*,
   737 F.3d 1145 (7th Cir. 2013) ....................................................... 27

*Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortgage Corp.*,
   No. 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ........ 34

*Oron 2015 LLC v. City of Southfield*,
   No. 18-CV-12671, 2019 WL 2502739 (E.D. Mich. June 17, 2019) ......... 19, 23, 24, 35

*Ovella v. B & C Const. & Equip., LLC*,
   No. 1:10CV285 LG-RHW, 2011 WL 2912865 (S.D. Miss. July 18, 2011) ............ 15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..................................................................... 33

*Pilgrim v. Univ. Health Card, LLC*,
   No. 5:09CV879, 2010 WL 1254849 (N.D. Oh. Mar. 25, 2010) ............ 25

*Robinson v. Sheriff of Cook Cty.*,
   167 F.3d 1155 (7th Cir. 1999) ....................................................... 31

*Sateriale v. RJ Reynolds Tobacco Co.*,
   No. 2:09-CV-08394-CAS, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) ............ 29

*Saucier v. Coldwell Banker Joseph M. Endry Realty*,
   302 F. App'x 302 (5th Cir. 2008) .................................................. 20

*Sicav v. James Jun Wang*,
   No. 12 CIV. 6682 PAE, 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) ............ 35

*Sinohui v. CEC Entertainment, Inc.*,
   No. EDCV 14-2516-JLS, 2016 WL 3475321 (C.D. Cal. Mar. 16, 2016) ............ 11

*Snead v. CoreCivic of Tennessee, LLC*,
   No. 3:17-CV-0949, 2018 WL 3157283 (M.D. Tenn. June 27, 2018) ............ 19

*Sprague v. General Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ........................................................ 33

*Stewart Coach Indus., Inc. v. Moore*,
   512 F. Supp. 879 (S.D. Ohio 1981) ................................................ 13

*Taylor v. S. Farm Bureau Cas. Co.*,
   954 So. 2d 1045 (Miss. Ct. App. 2007) .......................................... 32

*The Dalles Irrigation Dist. v. United States*,
    88 Fed. Cl. 601 (Fed. Cl. 2009) ........................................................ 13

*Thomas v. Moore USA, Inc.*,
    194 F.R.D. 595 (S.D. Ohio 1999) ...................................................... 12

*Thompson v. State Farm Fire & Cas. Co.*,
    No. 5:14-CV-32 (MTT), 2016 WL 951537 (M.D. Ga. Mar. 9, 2016) ................. 14

*Tommy E. Hill v. Transamerica Corp., et al.*,
    No. CV-2016-000401.00 (Ala. Cir. Ct. Nov. 27, 2016 and June 17, 2019) ............ 8

*Vogt v. State Farm Life Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020) ........................................................... 27

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
    206 F.R.D. 271 (C.D. Cal. 2002) ...................................................... 32

*Wallace v. Greenville Pub. Sch. Dist.*,
    142 So. 3d 1104 (Miss. Ct. App. 2014) ............................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................. 8, 9, 35

*Webster v. LLR, Inc.*,
    No. 2:17CV225, 2018 WL 10230741 (W.D. Pa. Aug. 20, 2018) ...................... 31

*Wiener v. AXA Equitable Life Ins. Co.*,
    No. 16 CIV. 04019 (ER), 2019 WL 1228074 (S.D.N.Y. Mar. 15, 2019) .............. 16

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
    280 F.R.D. 332 (E.D. Mich. 2012) ...................................................... 9

*Yarger v. ING Bank, fsb*,
    285 F.R.D. 308 (D. Del. 2012) ..................................................... 29, 30

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ........................................................... 10

*Yue v. Conseco Life Ins. Co.*,
    282 F.R.D. 469 (C.D. Cal. 2012) ....................................................... 9

**Rules**

FED. R. CIV. P. 15(b)(2) ................................................................. 10

FED. R. CIV. P. 23 .................................................................. passim

FED. R. CIV. P. 23(b)(2) ................................................................ 35

FED. R. CIV. P. 23(b)(3) ................................................. 10, 18, 32, 33

# I.     <u>**SUMMARY OF THE ARGUMENT**</u>

Despite years of discovery, the production of over 130,000 pages of documents, and multiple depositions, Plaintiff is no closer to proving her one and only pleaded theory of recovery—that U.S. Financial Life Insurance Company ("USFL") perpetrated a "money grab" by raiding the values of its Nova and SuperNova life insurance policies—via a Cost of Insurance ("COI") rate increase—to save the company's balance sheet. Discovery has plainly disproven Plaintiff's pleaded theory, as even Plaintiff's expert concedes that the deterioration in mortality expectations (USFL's basis to adjust the COI rate) justified raising COI rates *sooner*.

Plaintiff has nothing to demonstrate that her 266-paragraph, 63-page First Amended Complaint ("FAC") is credible or her claims certifiable under Rule 23. Plaintiff thus abandons those allegations and now seeks to improperly certify a class based on a shotgun-scatter of theories never pleaded, never disclosed, and having nothing to do with the life insurance policy's plain language. Her new allegations about pre-contractual conduct, esoteric actuarial critiques, and consideration of an impermissible factor are nowhere in her FAC. A simple word search confirms as much.

Plaintiff's failure to timely plead these theories is not the only impediment to certification. Under Rule 23's required "rigorous analysis," Plaintiff must show claim-by-claim, that is, theory-by-theory, that her case is certifiable. But Plaintiff skips this analysis. Instead, she improperly lumps her allegations together and attempts to discharge her Rule 23 burden in the aggregate, asking the Court to ignore her lack of evidence and the impediments to certification inherent in each individual theory. Rule 23, however, demands far more from a plaintiff seeking the exceptional step of class action certification. As is shown below, under the required claim-by-claim analysis, Plaintiff's Motion fails.

Plaintiff's Motion superficially relies on the commonality of similar contracts to seek certification. However, her new theories have little to do with policy language. First, Plaintiff tells a tale of poor underwriting, "table shaving," and improper original assumptions, occurring between thirteen and twenty years ago, all of which pre-date contract formation (USFL will address these as Plaintiff's "Pre-Contractual theories"). They also raise individualized issues as to standing, liability, ascertainability, and damages. Second, Plaintiff criticizes how the actuaries performed their responsibilities (analyzed below as the "Actuarial Criticisms"). Those criticisms, however, are untethered from any contractual obligation, and Plaintiff offers no evidence as to the effect of any actuarial critique on her policy or the class at large. Third, Plaintiff's newfound contention that USFL considered an "Impermissible Factor"—interest spread compression—in justifying the COI rate increase also fails because Plaintiff neglects to show through common evidence that any alleged consideration of spread compression impacted the COI rate on her Policy or the class.

Plaintiff's non-contractual claims for breach of the implied covenant of good faith and fair dealing, conversion, and fraud (in the alternative), presumably based on the same theories (as there is no way to tell absent a compliant pleading), are also not certifiable because they demand individualized inquiries on a host of choice of law, liability, and damages issues.

Plaintiff's mishmash of unpleaded and untimely theories have little to do with the contracts at issue and cannot survive Rule 23's "rigorous analysis." As such, her Motion should be denied.

## II.  FACTUAL BACKGROUND

### A.  The Policy expressly permits USFL to increase the cost of insurance rates.

This case arises from a USFL flexible premium adjustable life insurance policy, applied for in Mississippi and issued on the life of Wirt Adams Yerger, a Mississippi resident, in March 2001. *See* Ex. 1, Yerger Dep., Dep. Ex. 100 at Yerger-000097, 99. Policy ownership was eventually transferred to the Wirt Adams Yerger, Jr. Legal Trust (the "Trust") for which Vivian

Farris is the Trustee. Ex. 2, Farris Dep. 47:19-25. Plaintiff's Policy is a universal life ("UL") insurance product that combines a death benefit with a cash value component, often known as the "policy value," which "is an amount that is defined by the nature of the contract . . . based on premiums and interest and charges." Policy, Doc. 51-2 at PageID 1415-31; Ex. 3, Luber Dep. 22:21-23:3. Unlike whole life or term life insurance, which require fixed periodic premium payments, UL policies are flexible, allowing policyholders to vary the timing and amount of their premium payments. Policy at PageID 1415-31. As premiums are paid, a UL policy accumulates policy value, to which the insurer credits interest (in this case no less than 4% guaranteed) and from which the insurer deducts certain monthly charges, including the cost of insurance. *Id.* at PageID 1425-26. As long as the policy value covers the monthly deductions, the policy will remain in force. *Id.*

A UL policy's flexibility extends to the insurer as well. On every policy, the insurer assesses a monthly cost of insurance charge based on, among other things, the COI rate scale associated with the Policy. *Id.* at PageID 1426. The COI rate is actuarially derived from numerous predictions about future events, such as anticipated mortality and interest rates. *Id.* Given the inherent uncertainty in predicting the future, the UL Policy permits USFL to adjust the COI rate after policy issuance:

> **Cost Of Insurance Rate**
> The cost of insurance rate is based on the Insured's sex, attained age and premium class. For the initial specified amount, we will use the premium class on the policy date. For each increase in the specified amount, we will use the premium class applicable to the increase. As a result, there may be a different cost of insurance rate for each increase.
>
> The guaranteed maximum cost of insurance rates are shown in the Table of Maximum Monthly Insurance Costs on page 5. We have the right to use cost of insurance rates that are lower than the guaranteed rates and may change the rates from time to time. Any change in the cost of insurance rates will apply uniformly to all members of the same class.

*Id.* Per the Policy, USFL could adjust the COI rate if its current projection of factors impacted by the "Insured's sex, attained age and premium class" differed from that expected at the time of

pricing, so long as USFL did not exceed the guaranteed maximum rate. *See id.* Both Plaintiff and Mr. Yerger concede that the Policy plainly states the COI rate could increase over time. Ex. 1 at 42:23-43:11; Ex. 2 at 58:7-15.

The Nova and SuperNova products were originally priced and introduced for sale in 1999 and 2001, respectively. Ex. 3 at 106:23-107:7, Dep. Ex. 21 at USFL 013676; Ex. 4, Lessing Dep. 81:15-82:5; Ex. 5, Lai Dep. 22:9-17. When someone applied for a policy, the application was underwritten; that is, the company assessed the mortality risk associated with the applicant and determined the insured's premium class as established by the insurer. Ex. 3 at 25:17-27:5. Because 99.9% of the Nova and SuperNova policies were "issued from 2000 to 2007," the bulk majority of the policies were underwritten no later than 2007 (Mr. Yerger's was underwritten in 2001). Ex. 3 at USFL 013676.

### B. USFL increased COI rates in 2008 based on deteriorating mortality expectations.

In 2008, USFL increased the COI rate on the Nova and SuperNova products due to deteriorating mortality expectations. Doc. 26 at PageID 295-96. Plaintiff did not object to the 2008 COI rate increase. Ex. 2 at 60:4-17, 62:22-63:4, 67:7-69:22, 79:12-14. And, Plaintiff concedes she is "not making a legal claim as to the 2008 COI increase[.]" Doc. 26 at PageID 295.

### C. 2015 COI Rate increase was permissible pursuant to plain language in the policy.

In 2015, based on its assessment of future mortality expectations, USFL concluded: "The mortality experience has . . . continued to be worse than that expected at pricing. Overall, the actual-to-pricing [mortality] ratio is about 259% by face amount excluding substandard classes (271% including)." Ex. 3 at USFL 013676. Neither Plaintiff nor her expert dispute or offer evidence that the mortality ratio was anything else. After extensive actuarial testing and consideration of a range of permissible increases, USFL exercised its discretion under the Policy to increase COI rates by 40% on policies issued at a premium rating of standard or better, subject

to the policies' guaranteed maximum rates (the "COI Rate Increase"). Ex. 5 at 139:17-140:2, 167:16-168:11, 184:4-10; Ex. 3 at USFL 013676. USFL implemented the COI Rate Increase with a "margin for conservatism" to account for the potential that "mortality may improve in the future" by as much as 20%. Ex. 3 at 56:22-59:23; Ex. 3 at USFL 013676. In fact, even with the COI Rate Increase, USFL still expected to lose $15 million on the Nova and SuperNova policies going forward, roughly $39 million lower than that anticipated when the policies were priced. Ex. 3 at USFL 013676. USFL then informed policyholders that due to the deterioration in mortality expectations, it was raising the COI rates. Aug. 2015 Ltr., Doc. 51-2, PageID 1506.

## III.    PROCEDURAL BACKGROUND

### A. Plaintiff alleges that the 2015 COI Rate Increase was a "money grab."

Two years after USFL adopted the new COI rates, Plaintiff filed suit claiming that the 2015 COI Rate Increase was improper. Complaint, Doc. 1. The lengthy pleading lays out a Grimm's fairy tale of alleged financial mismanagement by AXA, alleged to be USFL's parent company at the time, claiming that the increase was a mere ruse to disguise a desperate "money grab" to save AXA from financial insolvency due to a fictional captive reinsurance scheme, a regulatory remediation,[1] and other losses. *Id.* at PageID 6, 7-51, ¶¶ 28, 39-211. This story though is a near rip-off of a prior lawsuit that Plaintiff's law firm filed against a different insurer, Banner Life Insurance Company. *See Dickman v. Banner Life Ins. Co.*, No. 1:16-cv-192, Doc. 1 (D. Md. Jan. 19, 2016). Plaintiff largely copied and pasted another plaintiff's allegations of a supposedly nearly identical "money grab" scheme. While Plaintiff later amended to add two fraud claims in her FAC, she left her cut-and-paste allegations undisturbed. USFL then moved to dismiss. Doc. 21.

---

[1] Plaintiff's Motion and FAC inexplicably reference a remediation done with the North Carolina Department of Insurance as a result of a scrivener's error in certain policies. Ex. 3 at 129:17-21; Ex. 4 at 98:2-99:7. The remediation, which resolved years ago, is irrelevant and dealt with policies that are not part of the putative class. *See* Ex. 4 at 97:21-98:2.

**B. The Court largely granted USFL's Motion to Dismiss.**

In its ruling on USFL's motion to dismiss the FAC, the Court dismissed some claims and significantly narrowed others. Order, Doc. 31 at PageID 348-59.[2] The Court also accepted Plaintiff's concession that "Mississippi law should apply" in the event of a conflict. Order at PageID 349. The Court outright dismissed (along with unjust enrichment) the claim for misrepresentation/concealment of financial solvency, concluding that Plaintiff's "allegations that [USFL] misrepresented and/or omitted facts about its financial health" were "too vague and ambiguous as pled to establish a misrepresentation claim." Order at PageID 358-59. As the Court noted, this case turns on the contract: "The Court . . . is unable to find that Defendant owed [] a duty separate and apart from the contract." *Id.* at PageID 356-58. Plaintiff never amended the FAC.

**C. Lacking evidence of a "money grab," Plaintiff pivots and bases her class certification motion on irrelevant and unsupported allegations of claims not found in the FAC.**

Plaintiff seeks class certification of her remaining claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraud (in the alternative) with hardly a reference to the factual allegations asserted in the FAC. Instead of amending the FAC to add new grounds for recovery, Plaintiff inexplicably utilizes her class certification motion to raise her novel theories; this alone warrants denial of class certification. But, rather than address how each theory warrants class certification, Plaintiff's Motion commingles her new theories and then addresses their applicability to the requirements of Rule 23 in a collective and conclusory fashion. This is improper. *See infra* at p. 10. Since the Court must perform its rigorous analysis of each theory individually, for ease of reference, USFL addresses each new theory under three general categories:

---

[2] The Court also limited Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and questioned whether Plaintiff could ultimately recover under her conversion claim. Order at PageID 352-53.

*Pre-Contractual Theories*: Plaintiff first claims that USFL marketed the Nova and SuperNova products to the health-impaired market, improperly underwrote the policies, unjustifiably placed impaired risks into better premium classes (i.e., so called "table shaving"), and failed to adjust mortality assumptions accordingly. Per Plaintiff, all of this rendered the original pricing assumptions—determined some 20+ years ago—"unreasonable." Memo, Doc. 51-1 at PageID 1368-69. The FAC is silent on the existence or relevance of any such allegations.

*Actuarial Criticisms*: Without pointing to any factual allegations in the FAC, Plaintiff criticizes the permissible discretion exercised by USFL's actuaries with respect to the 2015 COI Rate Increase. Specifically, Plaintiff criticizes company actuaries for:

- Using different actuarial mortality tables at various points in time to assess mortality. *Id*. at PageID 1369;
- Filing erroneous responses to regulatory interrogatories. *Id*. at PageID 1369, 1372-73;
- Basing the 2015 COI Rate Increase on "only one issue age and sex." *Id*. at PageID 1369-70;
- Recouping past losses. *Id*. at PageID 1373;
- Testing the impact of increases ranging from 20-40% before making a final decision. *Id.* at PageID 1373-75; and
- Using the wrong internal methodology (the component versus the integrated approach). *Id*. at PageID 1371-72.

Plaintiff's Actuarial Criticisms have nothing to do with the Policy's COI language, are nowhere to be found in the FAC, lack class-wide evidence, and cannot withstand Rule 23's rigorous analysis.

*"Impermissible Factor" Theory*: Plaintiff asserts that USFL considered an "Impermissible Factor" when assessing the COI rate. The Policy provides that the COI rate can be increased "based on the Insured's sex, attainted age and premium class." Plaintiff contends in her Motion that USFL also considered "spread compression"; i.e. the difference between the earned and credited interest rates. *Id*. at PageID 1370-71, 1387. The new theory is legally irrelevant because it is not a basis for breach of contract and because Plaintiff offers no quantitative evidence to purport to prove the

theory or how either her Policy or those of the putative class were impacted by the alleged pre-contractual conduct.

As is so often the case when a party offers a hodgepodge of (unpleaded) claims in the aggregate, no one claim can individually stand on its own, especially under a "rigorous analysis." But, as discussed below, Rule 23 demands an individualized and "rigorous" analysis, and under such scrutiny, Plaintiff's Motion fails.

## IV.    LEGAL STANDARD

### A.  There is no "preference for class certification" and certification is not the "only way."

Citing an overruled, out-of-circuit opinion, Plaintiff asks this Court to commit clear error by adopting a legal standard with a "preference for class certification." *Id*. at PageID 1378 (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)). But *Eisenberg* is not good law, and no "preference for class certification" exists. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 483 (3rd Cir. 2018) ("*Eisenberg* is no longer the law of this circuit. When courts harbor doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified."). Not only does Plaintiff erroneously represent that the Court must employ a "preference" for certification, Plaintiff goes so far as to declare: "A class action is not only the best way to determine if USFL is breaching the contract by increasing its COI rates . . . it is the only way." Memo at PageID 1378. That is just not so. In fact, Plaintiff's law firm litigated such a case on an individual basis.[3] Plaintiff instead depicts a false choice: certify or preclude Plaintiff from asserting her claims. Unsurprisingly, Plaintiff cites to no instance of a Court agreeing with this (false) choice.

Contrary to Plaintiff's representations, class certification is the "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart*

---

[3] S*ee Tommy E. Hill v. Transamerica Corp., et al.*, No. CV-2016-000401.00, Docs. 2, 256 (Ala. Cir. Ct. Nov. 27, 2016 and June 17, 2019). The complaint and dismissal order in *Hill* are attached as Exhibits 7-8.

*Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). In the Sixth Circuit, a district court "must perform a 'rigorous analysis' of the evidence to determine if the party seeking class certification has met their burden of proof" of establishing Rule 23's requirements by "a preponderance of the evidence." *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332, 337 (E.D. Mich. 2012) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078-80 (6th Cir. 1996)). Plaintiff must come forward with evidence, as "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. The Court's "'rigorous analysis' may 'overlap with the merits of the plaintiff's underlying claim,'" and "[a]s such, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Kondash v. Kia Motors America, Inc.*, No. 1:15-CV-506, 2020 WL 5816228, at *3 (S.D. Ohio Sept. 30, 2020) (citations omitted).

**B.  The Court's "rigorous analysis" must scrutinize each claim individually.**

Each theory of liability must stand or fall on its own merits under Rule 23's "rigorous analysis." *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 109-10 (E.D. Mich. 2019); *Jenkins v. Macatawa Bank Corp.*, No. 1:03-CV-321, 2006 WL 3253305, at *13 (W.D. Mich. Nov. 9, 2006). Plaintiff, however, ignores this basic tenet by lumping her allegations together, inviting the Court to disregard the requisite individualized analysis. Instead of meeting her Rule 23 burden, Plaintiff simply points to other courts that have certified COI rate class actions, hoping this Court will blindly assume that the facts and theories here are the same as in those other cases.[4] But they are not, and each of Plaintiff's new theories fails under the required analysis.

---

[4] Neither *Feller, Fleisher*, nor *Yue* dealt with the barrage of unpleaded and time-barred allegations that are unsuitable for class certification, as they raise a host of individualized issues discussed below. *Feller v. Transamerica Life Ins. Co.*, No. 2:16-CV-01378-CAS-AJW, 2017 WL 6496803, at *1-18 (C.D. Cal. Dec. 11, 2017); *Fleisher v. Phoenix Life Ins. Co.*, No. 1:11-CV-8405 (CM), 2013 WL 12224042, at *1-18 (S.D.N.Y. July 12, 2013); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 471-85 (C.D. Cal. 2012). Nor did any seek to certify a nationwide class for bad faith, conversion, and fraud. Moreover, the policy language as to each is materially different, and Plaintiff does not explain in her motion—as is her burden—how they compare to this case. *Fleischer* is specifically discussed *infra* at pages 24-25.

### C. Plaintiff must demonstrate that each claim satisfies Rule 23(a) and (b)(3).

"To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citation omitted). Rule 23(b)(3) requires Plaintiff to establish "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This includes whether "variations in state law defeat predominance." *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 222 (W.D. Mich. 1998) (citing *In re Am. Med. Sys.*, 75 F.3d at 1085).

## V.  ARGUMENT

Plaintiff fails to meet her Rule 23 burden because: (A) the Court cannot certify unpleaded and undisclosed allegations; (B) Plaintiff's new theories are time-barred; (C) Plaintiff's contractual claims lack common evidence, inject overwhelming individualized issues, and are not adequately represented by Plaintiff; (D) Plaintiff's non-contractual claims similarly fail and are subsumed by application of differing state laws; and (E) Plaintiff lacks class-wide evidence for her remedies.

### A. Class certification must be denied because Plaintiff's Motion is based on unpleaded and undisclosed allegations.

Plaintiff improperly asks this Court to certify a class premised on theories that are not in her FAC, are completely contrary to it, and were never disclosed. "[A] proposed class should not be certified if it is seeking recovery on a claim that is absent from the operative complaint[.]" *Durand v. Hanover Ins. Group, Inc.*, No. 3:07-CV-00130-HBB, 2018 WL 1948098, at *6 n.5 (W.D. Ky. Apr. 25, 2018); *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("[T]he district court abused its discretion by certifying a class based on claims not pleaded in the complaint."). "The operative complaint must provide 'adequate notice of the claims that underl[ie] the motion to certify [the proposed class].'" *Junod v. NWP Services Co.*, No. 8:14-

cv-1734-JLS, 2016 WL 6306030, at *5 (C.D. Cal. July 18, 2016) (quotations omitted). "'Class certification is not a time for asserting new legal theories that were not pleaded in the complaint.'" *Durand*, 2018 WL 1948098, at *6 n.5; *Sinohui v. CEC Entertainment, Inc.*, No. EDCV 14-2516-JLS, 2016 WL 3475321, at *9 (C.D. Cal. Mar. 16, 2016) ("Where proposed classes 'seek[] recovery on the basis of a theory not found in the operative complaint,' courts generally decline to certify the class."). Thus, Plaintiff's Motion fails.

A cursory review of the FAC reveals that the Pre-Contractual, Actuarial Criticism, and Impermissible Factor theories are mentioned nowhere. *See* Doc. 19 at PageID 156-99, ¶¶ 39-221.

| | |
|---|---|
| Pre-Contractual Theories: | Accusations about "table shaving," "impaired risk," and the reasonableness of USFL's original pricing assumptions are not in the Amended Complaint. A simple word search yields no results. "Underwriting" is mentioned only in the unrelated context of reinsurance. *See* Doc. 19 at PageID 180, ¶ 145. |
| Actuarial Criticisms: | Charges about changing actuarial tables, following an integrated/ component approach, following Actuarial Standards of Practice ("ASOP"), USFL's regulatory interrogatories, and other process critiques are not found under any liberal reading of the FAC and have nothing to do with the Policy's plain language. |
| Impermissible Factor: | Plaintiff's contention regarding "spread compression" is nowhere to be found in the FAC. |

Instead, Plaintiff's lengthy allegations in the FAC detail an alleged captive reinsurance scheme and "money grab," borrowed from another lawsuit, conspicuously absent from Plaintiff's Motion:

> 73. Because of the reinsurance scheme described below, USFL does not have sufficient reserves to pay the death benefits coming due in the near future.
>
> 74. Faced with the unprecedented death benefit obligations, and a significant reserve shortfall, USFL chose to increase the COI charges on the Nova and SuperNova UL policies, believing that the owners of these policies either (a) had the resources to pay exorbitant COI charges, or (b) would allow their policies to lapse, thus relieving USFL of its payment obligations.

*Id*. at PageID 165, ¶¶ 73-74. The FAC describes the supposed captive reinsurance scheme in eye-blurring detail with diagrams and flow charts allegedly showing that USFL was under-reserved

and that the 2015 COI Rate Increase was intended to force policyholders to lapse their policies. *See id.* at PageID 166-99, ¶¶ 79-211. The Court accurately summarized Plaintiff's FAC in the Motion to Dismiss Order: "Plaintiff claims that the[] increase[] in COI rates [in 2015] were not based on changes in mortality experience, but rather, were a way for USFL to find new cash for the company, rid itself of near-term liabilities, and recoup prior losses." Order at PageID 346.

Plaintiff's discovery responses further embraced the alleged reinsurance scheme. When USFL squarely asked Plaintiff to identify "the factual basis for Your allegations that USFL 'instituted unreasonable COI increases for purposes not authorized under the life insurance policy,'" she swore that "the cost of insurance is an attempt to recoup prior losses as Defendant . . . is shoring up its reserves or surplus due to the captive reinsurance scheme described in the complaint[.]" Ex. 2, Dep. Ex. 99 at 9. Then, at her deposition, Plaintiff maintained that the 2015 COI Rate Increase was the result of a "money grab," stating that USFL "was having financial problems," "didn't have enough reserves to pay [its] claims," its "rating was dropped at the time," and it was "trying to minimize [its] losses on past claims." Ex. 2 at 64:8-25, 95:1-96:6.

Plaintiff cannot now retreat from her unmerited case and pivot to certify a class based on unpleaded and undisclosed allegations. On this basis alone, the Court should deny the Motion.

**B. Plaintiff's new allegations are time-barred, precluding certification.**

Plaintiff's new theories are also time-barred. Had they been asserted in a pleading, USFL would have challenged their timeliness at the outset. Still, for purposes of a "rigorous analysis," the timeliness of claims cannot be overlooked. A class representative whose claim is time-barred cannot assert the claim on behalf of a class. *See Thomas v. Moore USA, Inc.*, 194 F.R.D. 595, 601

(S.D. Ohio 1999). Here, the applicable statute of limitations lapsed after three years.[5]

With respect to the Pre-Contractual theories, the Policy was applied for and issued in 2001. *See supra* at p. 2. Thus, theories regarding underwriting, risk classification, and pricing have been time-barred since 2004. Likewise, the putative class members' claims are also time-barred. As noted, the policies were originally priced from 1999-2001 and underwritten from 2000-2007. Ex. 3 at 106:23-107:7, Ex. 3 at USFL 013676; Ex. 4 at 81:15-82:5; Ex. 5 at 22:9-17. Moreover, Plaintiff ignores that her alleged Pre-Contractual theories presumably existed in 2008, when USFL previously raised the COI rate, absent any objection from Plaintiff. *See The Dalles Irrigation Dist. v. United States*, 88 Fed. Cl. 601, 613 (Fed. Cl. 2009) ("[A]ny such accrual would have occurred the first time that the Bureau failed to grant a surplus credit allegedly due . . ..").[6] Thus, Plaintiff's new Pre-Contractual claims are time barred.

Plaintiff's Actuarial Criticism and Impermissible Factor theories fare no better. While the actions underlying these theories allegedly occurred at or around the 2015 COI Rate Increase, the theories are not pleaded in the FAC. Thus, they do not relate back to 2017, when Plaintiff filed this lawsuit, because they involve new theories based on a completely different set of facts than those described in the FAC. *See* Doc. 19 at PageID 156-99 ¶¶ 39-211; *Moross Ltd. P'ship v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 518 (6th Cir. 2006) (holding that allegations included in summary

---

[5] Plaintiff stipulated Mississippi law controls. Doc. 26 at PageID 282. Mississippi's three-year statute of limitations controls. *See Covington County Bank v. Magee*, 177 So. 3d 826, 828 (Miss. 2015); *Wallace v. Greenville Pub. Sch. Dist.*, 142 So. 3d 1104, 1106 (Miss. Ct. App. 2014); *CitiFinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007); *Archer v. Creel*, 217 So. 3d 690, 693 (Miss. Ct. App. 2016) ("[F]raud claims have a three-year statute of limitations."). Plaintiff has also not pleaded reliance on the discovery rule. *See Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981) ("[W]hen a complaint affirmatively indicates that the alleged fraud occurred at a remote time, such that it would ordinarily be barred by the statute of limitations, it becomes the duty of the plaintiff who seeks to rely on the 'discovery rule' to affirmatively and particularly plead the date of discovery, as a material averment under F.R.C.P. 9(b), (f), or face dismissal of the complaint.").

[6] Questions as to notice of accrual would certainly raise issues precluding class certification. *Molina v. Roskam Baking Co.*, No. 1:09-CV-475, 2011 WL 5979087, at *5 (W.D. Mich. 2011) (citing *Butler v. Sterling, Inc.*, No. 98–3223, 2000 WL 353502, at *7 (6th Cir. Mar.31, 2000)) (denying class certification, in part, "because the question of Defendant's liability to a substantial portion of the class turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant's alleged misconduct").

judgment briefing would not relate back to original complaint when new theories "involve a completely different set of factual disputes").[7] Because Plaintiff's claims are time-barred, she cannot represent a class based on untimely claims. *See Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS CAB, 2008 WL 8929013, at *25 (S.D. Cal. July 8, 2008).

### C. Plaintiff's breach of contract claim cannot be certified because Plaintiff's new allegations are not a basis for breach and fail under Rule 23's rigorous analysis.

Plaintiff argues that certification of a breach of contract is intuitive because the language is similar across the policies. However, the bulk of Plaintiff's new theories have nothing to do with the contract language. And, even if Plaintiff could loosely tie any theory to a duty in the contract, common language alone does not end the inquiry.[8] Rather, a theory-by-theory analysis reveals that Plaintiff's claims cannot be certified.

#### 1) Plaintiff's Pre-Contractual theories do not assert a breach of contract and fall short of satisfying Rule 23.

With the Pre-Contractual theories, Plaintiff abandons the FAC's allegations that mortality expectations did not deteriorate. Doc. 19 at PageID 159, ¶ 51. Instead, Plaintiff now accepts that mortality worsened, but argues that the deterioration was USFL's fault; that a host of pre-contractual sins estops USFL from raising the COI rates. In a normal contract case, certification of class-wide claims (uniform breach of a defined term) and ascertaining those putative members (all contracting parties) can be straightforward. Here, however, Plaintiff's new theories <u>do not</u>

---

[7] Despite conceding that she is not making a claim based on the 2008 COI Rate Increase, Order at PageID 359, Plaintiff relies on allegations relating to it in support of class certification, Memo at PageID 1366-67, 1372-73.

[8] *Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC*, No. 15-24375-CIV, 2016 WL 8542540, at *4 (S.D. Fla. Dec. 1, 2016) ("[E]ven where contracts are more or less uniform, individualized issues may still predominate."); *Thompson v. State Farm Fire & Cas. Co.*, No. 5:14-CV-32 (MTT), 2016 WL 951537, at *9 (M.D. Ga. Mar. 9, 2016) ("[E]ven assuming that the issue of coverage is sufficient to establish commonality, it does not predominate over the individualized issues of fact that must be resolved."); *In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 456 (N.D. Cal. 2012), *aff'd*, 588 F. App'x 733 (9th Cir. 2014) ("The court finds that the proposed class cannot be certified under Rule 23(b)(3) because common questions do not predominate with regard to plaintiffs' claim of 'systematic breach of contract.'").

represent a breach of contract (they are an unpleaded waiver/estoppel theory), cannot be analyzed under an ordinary contract analysis, and do not support certifying a contractual claim. Plaintiff's theories <u>lack common evidence</u> of any wrong or harm, and <u>individualized issues predominate.</u> Such theories would require the Court to determine whether each putative class member (including Plaintiff) was harmed by the allegedly improper underwriting, table shaving, improper marketing, and pricing of every respective policy. Only then can the Court assess whether those harmed (if any) are so <u>numerous</u> to warrant class-wide adjudication. Finally, the Court must rigorously analyze whether Plaintiff's claims are typical and if she is an <u>adequate class representative</u>. Plaintiff fails to carry her burden at each step.

      a)   <u>*Not a breach*</u>*: Plaintiff's Pre-Contractual theories pre-date the policy contract and are not a basis to claim breach.*

First, Plaintiff's allegations of improper marketing, underwriting, risk classification, and pricing all necessarily pre-date the issuance of any class policy. *See* Memo at PageID 1368; *see also* Ex. 3 at 106:23-107:7, 2015 Memo at USFL 013676; Ex. 4 at 81:15-82:5; Ex. 5 at 22:9-17. Under both Mississippi and Ohio law, events occurring prior to contract formation cannot form the basis of a breach of contract claim. *Mettke v. Hewlett Packard Co.*, No. 2:11-CV-410, 2012 WL 13027065, at *3 (S.D. Ohio Aug. 15, 2012) ("The actions that Mettke alleges constitute breach of the contract all occurred *before* the contract was executed."); *J.A.M. Promotions, Inc. v. Tunica County Arena*, No. 2:09CV016-P-S, 2011 WL 2261300, at *3 (N.D. Miss. June 6, 2011), *aff'd*, 470 F. App'x 224 (5th Cir. 2012). Thus, the commonality of contract terms on which Plaintiff rests her entire request for certification is irrelevant for purposes of her Pre-Contractual theories. *See Alleman v. State Farm Life Ins. Co.*, 508 F. Supp. 2d 452, 458-59 (W.D. Pa. 2007).

Second, the Pre-Contractual theories have nothing to do with USFL's post-issuance right to change the COI "rates from time to time" based on an insured's age, sex, and premium class.

For that reason, Plaintiff all but drops any reference to "breach" and now argues that USFL waived or is somehow estopped from exercising its right to raise the COI rates. However, Plaintiff brought a *contract* claim, and the Court need only look to the Policy's COI language to reject the Pre-Contractual theories. *See Ovella v. B & C Const. & Equip., LLC*, No. 1:10CV285 LG-RHW, 2011 WL 2912865, at *1 (S.D. Miss. July 18, 2011) ("[A] party 'cannot be said to have breached a contract [based on] a duty it never assumed.'"). USFL issued a contract with clear language stating its right to raise COI rates. Plaintiff cannot link the alleged "Pre-Contractual theories" to that language or any breach thereof. Thus, the contract claim cannot be certified.[9]

          b)   <u>*Commonality*</u>: *Pre-Contractual theories are not supported by common evidence.*

Plaintiff offers no common evidence upon which to certify the contract claim. "'Without any evidence of a common defect, there are no 'common questions of law or fact' binding the proposed class together.'" *Kondash*, 2020 WL 5816228, at *11 (quoting *Kramer v. Toyota Motor Corp.*, 668 F. App'x 765, 766 (9th Cir. 2016)). Plaintiff's purported "common evidence" is heavy on rhetoric and light on substance:

| Allegation | Lack of Common Evidence |
|---|---|
| Improper Marketing | Plaintiff has no class-wide evidence as to how the Nova/SuperNova policies were marketed. What does marketing to the "health-impaired" market even mean, why is it legally wrong, and who in the class did it affect? The allegation is made in a vacuum and is unrelated to the alleged breach of contract. |
| Improper Underwriting | Plaintiff offers no underwriting materials for the class, much less evidence of improper underwriting, as underwriting materials were not sought in discovery (because it is not part of the case). |

---

[9] Plaintiff's new theories are also illogical and would have been properly dismissed on the pleadings. To the extent that some insureds were more favorably underwritten by USFL than they would have been by other life insurers (of which there is no evidence), the result is that those insureds received (and may still be receiving) the benefit of years of more favorable rates. By receiving more favorable rates than they would have received on the market, they cannot claim to have been injured when USFL raised COI rates that had been undercharged. Plaintiff's actuarial expert, Larry Stern, agrees with this, stating that policyholders subject to the alleged "table shaving" were, at least at some point, "paying a lower premium than they would otherwise have to pay." Ex. 6, Stern Dep. 132:10-18.

| Table Shaving | Plaintiff offers no evidence that table shaving actually occurred—just conjecture. Plaintiff's expert concedes that he does not know if the so-called "table shaving program" was ever even implemented (and if so, when). Ex. 6 at 130:6-131:22.[10] Without evidence, the allegation is irrelevant. |
|---|---|
| Unreasonable original assumptions | Plaintiff offers no evidence or designates any expert to identify for the Court's review what the original assumptions should have been. |

Despite not possessing, discovering, or disclosing evidence to support her claim, Plaintiff's Motion instead liberally (and inaccurately) purports to summarize documents and testimony that, if rigorously reviewed, do not support her Pre-Contractual theories, and even contradict them.

| **Plaintiff's Cited "Evidence"** | **What the Evidence Actually Says** |
|---|---|
| As evidence of "table shaving," Plaintiff points only to a document stating that the SuperNova product "is designed to compare favorably with all other companies' select Standard, regular Standard premiums and rated premiums." Doc. 51-2 at PageID 1437. | That is not "table shaving." Harold Luber debunks this flawed understanding, explaining in testimony omitted from Plaintiff's Memo, "table shaving . . . is internal to a company's own underwriting program," and the document Plaintiff references "is comparing USFL's underwriting program to a different company's underwriting program." Ex. 3 at 33:21-34:21. |
| Plaintiff points to Mr. Lessing's description of an unrelated policy remediation as evidence of improper underwriting or table shaving. Memo at PageID 1368. | Plaintiff is wrong. Mr. Lessing did not describe a table shaving program, he described a remediation project involving policies not at issue in this putative class. Ex. 4 at 93:7-18, 98:25-99:7. In other words, Mr. Lessing's testimony is irrelevant. |
| Plaintiff attempts to tie these together as the "underwriting mistakes" supposedly described in an email from Vince Zink, a former actuary. Memo at PageID 1368. | Plaintiff did not depose Mr. Zink, who is not an underwriter. Plaintiff has no idea what Mr. Zink was describing and in what context, nor does his email confirm that underwriting mistakes existed or were systemic. |

---

[10] Mr. Stern's report and testimony about any "table shaving" is improper as he did not review evidence as to table shaving being "put into practice," he is not an underwriter, and concedes that he cannot opine on any table shaving allegations. Ex. 6 at 127:12-25, 130:2-131:22. This is not the first time Mr. Stern has improperly sought to testify on non-actuarial topics. *See Wiener v. AXA Equitable Life Ins. Co.*, No. 16 CIV. 04019 (ER), 2019 WL 1228074, at *8 (S.D.N.Y. Mar. 15, 2019) ("If [Stern's] experience was from an actuarial perspective and, if his opinions do not involve actuarial principles, the Court is constrained to conclude that he is not qualified to testify as an expert on these subjects."). Likewise, USFL will move to strike Mr. Stern.

Plaintiff's "evidence" is insufficient to withstand summary judgment, much less certification.

Nor has Plaintiff designated an underwriting expert to opine on her new allegations. Further, Plaintiff offers no qualitative or quantitative evidence of what underwriting labels like "select Standard, regular Standard premiums and rated premiums" even mean or how they impact the breach of contract claim. And taking her allegations to their ultimate conclusion, she has no common evidence as to how each theory impacted the COI rate. Plaintiff cannot even guess how much of the alleged COI rate increase is traceable to these Pre-Contractual theories—and her expert performed no such analysis. Ex. 6 at 16:11-17:19. Thus, Plaintiff fails to come forward with common evidence to determine "that every class member was impacted to some degree by the [alleged] violation[s]." *Food Lion, LLC v. Dean Foods Co*., 312 F.R.D. 472, 487 (E.D. Tenn. 2016). Because Plaintiff does not carry her burden to show the Pre-Contractual theories can be presented by common (or any) proof, the Court cannot certify.

c) <u>Predominance</u>: *Determining whether any class members were harmed by Pre-Contractual theories requires an individualized inquiry.*

Any class based on the Pre-Contractual theories must be limited to those who were actually harmed by the purported wrongful conduct. Contrary to Rule 23(b)(3)'s requirements, harm can only be assessed by conducting a policy-by-policy analysis to determine whether a putative class member suffered from the allegedly improper marketing, underwriting, and table shaving, raising individualized issues, which prevent her from meeting the requirement of predominance.[11] Moreover, Plaintiff would need to identify each improperly rated and marketed policy and quantify the effect of same to prove any aggregate harm to the class. Here, she does not do either, because

---

[11] Certifying a fail-safe class would be improper, and ironically would exclude Plaintiff because she agrees the Policy was properly underwritten. *See Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 538 (E.D. Mich. 2015). ("A failsafe class, by its nature, 'includes *only* those who are *entitled* to relief.' . . . 'Such a class is prohibited[.]'").

such an analysis would necessarily devolve into a review of the underwriting for each proposed member (which is inherently individualized), an assessment of how each policy was marketed, and an analysis of the insured's purchase decisions made up to two decades ago. *See* Ex. 3 at 25:22-27:5. Those inquiries would overwhelm any common issues the class may have, precluding certification under Rule 23(b)(3). *See Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000) ("The Court would have to analyze each individual underwriting file in order to determine each class members' damages. With 40,000 potential class members, that is a task too onerous for one court."); *see also Amchem Products, Inc. v. Windsor*, 524 U.S. 591, 624-25 (1997) (agreeing that inquiries into each proposed class member's health makes certification inappropriate). Because Plaintiff has not proven that individualized issues will not predominate over class-wide issues, the Court cannot certify Plaintiff's claim.

d) *Numerosity/Ascertainability: Without knowing which policyholders are class members, Plaintiff fails to ascertain and demonstrate numerosity.*

Plaintiff's Motion lacks evidence or expert analysis as to the putative class size and merely surmises that the class includes every Nova and SuperNova policyholder. As shown above, that conclusion is flawed, and Plaintiff's general "[r]eference to the total number of individuals conceivably harmed is insufficient to prove numerosity." *Castellanos v. Worldwide Distribution Sys. USA, LLC*, No. 14-CV-12609, 2015 WL 13862060, at *3 (E.D. Mich. Aug. 19, 2015). Plaintiff failed to identify a single policyholder, including herself, who was improperly rated or marketed. Without such evidence, Plaintiff fails to carry her burden to demonstrate that "the class is so numerous that joinder of all members would be impracticable." FED. R. CIV. P. 23(a)(1).

e) *Adequate Class Representative/Article III Standing: Without evidence she was harmed, Plaintiff lacks standing, making her an inadequate representative.*

Plaintiff's Motion fails to show that she is an adequate class representative (or member of the class) because she offers no evidence that she was injured by the Pre-Contractual theories and

therefore lacks standing. "'It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.'" *Oron 2015 LLC v. City of Southfield*, No. 18-CV-12671, 2019 WL 2502739, at *6 (E.D. Mich. June 17, 2019) (citation omitted). That is, "[t]he standing doctrine 'requires that a litigant have suffered an injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* at *3. Notably, "[a] plaintiff must demonstrate standing separately for each form of relief sought." *Id.* at *4; *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Threshold individual standing is a prerequisite for all actions, including class actions.").

Here, Plaintiff has no evidence that Mr. Yerger was improperly marketed to or rated improperly.[12] Ex. 1 at 18:4-20:12, 34:8-10, 40:22-25; Ex. 2 at 43:15-45:17. Plaintiff offers no evidence of underwriting criteria or guidelines showing that her Policy was improperly underwritten. Memo at PageID 1367-69. Nor does she offer an underwriting expert to opine on such issues. Plaintiff offers no evidence of an industry standard, no evidence of a deviation from said standard with respect to the Policy, and no evidence of any damage to her. But for the alleged Pre-Contractual theories, how specifically are her rates different today than from what they would have been? Plaintiff offers no answer, no specific number, and thus offers no evidence of injury. *Saucier v. Coldwell Banker Joseph M. Endry Realty*, 302 F. App'x 302, 305 (5th Cir. 2008) ("For a breach of contract claim, Mississippi law requires that damages not be based on speculation or conjecture.").Without any evidence showing harm traceable to the alleged wrongdoing, Plaintiff fails to show she is an adequate representative.

---

[12] Unlike most individuals that were marketed the policies, Mr. Yerger was especially well-versed with the insurance industry and marketing of life-insurance products, working at Ross & Yerger Insurance, where he sold all forms of life insurance for decades. Ex. 1 at 7:15-9:7, 10:12-11:9.

### 2) Plaintiff's Actuarial Criticisms do not serve as a basis for a breach of contract claim and fail class certification under Rule 23.

In her Actuarial Criticisms arguments, Plaintiff confusingly shifts from claiming that mortality deteriorated due to the pre-contractual wrongs to asserting that USFL "manipulated its mortality experience" to implement the COI rate increase. Memo at PageID 1367-69. Plaintiff cannot have it both ways. Plaintiff offers no evidence of any such manipulation—or evidence as to what mortality should have been—just criticisms as to how her expert might have performed the COI rate increase differently. Plaintiff's actuarial expert, Larry Stern, even acknowledges that reasonable actuarial minds can differ. Ex. 6 at 44:17-20. He admits that: "I'm not accusing the— any of the actuaries [] of being in violation of the Code of Conduct.[13] I am concerned that some of the Actuarial Standards of Practice weren't followed in a form that I feel they should have followed." *Id.* at 26:9-14. Mr. Stern, however, offers no definition for "actuarial soundness" and readily concedes that "there's not one defined standard." *See* Stern Report, Doc. 51-5, Page ID 1594-95 ¶¶ 30-31; *see also* Ex. 6 at 26:9-14; 18:21-24. He equates "actuarial soundness" to "pornography"—"it might not be defined, but I certainly know when I see it." Ex. 6 at 23:12-19.[14]

While Plaintiff criticizes USFL on irrelevant and unmerited issues, a disciplined review of each criticism reveals that Plaintiff has not demonstrated that any new theory amounts to a breach of the Policy or is capable of certification because they lack common evidence, individualized issues predominate, and Plaintiff is not a typical or adequate representative.

---

[13] In so doing, Mr. Stern necessarily agrees that USFL actuaries "utilize[d] professional judgment, taking into account generally accepted actuarial principles and practices," as required by the Code. Code of Professional Conduct, Precept 3, Annotation 3-2. In fact, he agrees that, in not violating the Code, USFL actuaries did not "engage in a bait and switch or actuarial magic." Ex. 6 at 98:2-6.

[14] This, of course, is improper *ipsi dixit* and will be the subject of USFL's forthcoming motion to strike.

> a) *<u>The use of different mortality tables</u>: Mortality tables are not mentioned in the contract, and Plaintiff offers no evidence of harm.*

At the outset, Mr. Stern critiques USFL for relying on different mortality tables at different times for the purposes of predicting mortality. Memo at PageID 1366-69. But neither Plaintiff nor Stern offers *any* evidence as to whether the alleged use of different tables helped or harmed Plaintiff or helped or harmed each class member. Ex. 6 at 145:3-146:2; *Ford*, 301 F.3d at 333. Moreover, Plaintiff fails to demonstrate how this theory is relevant to her breach of contract claim. Nowhere does the Policy address the use of a specific mortality table. *See* Policy at PageID 1415-31. Plaintiff cannot add terms to the Policy that are plainly not there. *Housing Auth., City of Laurel v. Gatlin*, 738 So. 2d 249, 251 (Miss. Ct. App. 1998) ("[P]arol evidence is not admissible to contradict, vary, alter, *add to*, or detract from, the instrument."). Plaintiff's failure to offer any particular evidence is likely because none exists, as the 2015 COI Rate Increase was based on the *same* mortality table used when the products were originally priced. Ex. 3 at 80:6-81:5, 176:9-23. Because Plaintiff offers no evidence that USFL's use of the same table used at pricing injured her (or the class), "[P]laintiff has no viable breach of contract claim[,] her claim is not typical of the class and she is not an adequate representative[.]" *Alleman*, 508 F. Supp. 2d at 458-59.

> b) *<u>USFL's regulatory filings</u>: Regulatory filings are not part of the contract, and Plaintiff never saw or relied on them.*

Mr. Stern also takes issue with how USFL responded to state regulatory disclosures in annual filings (interrogatories). Memo at PageID 1369. The Policy, of course, never mentions interrogatory responses.[15] Policy at PageID 1415-31. Thus, Plaintiff cannot certify a class for breach of contract when USFL admittedly did not breach the contract. Instead, Plaintiff argues

---

[15] Plaintiff erroneously interprets USFL's interrogatories. As Mr. Lessing testified, the interrogatories are "asking whether *anticipated* mortality at the time this interrogatory is being answered" is "materially different than *current experience*," and the 2015 COI Rate Increase was based on USFL's anticipated experience being "[w]orse than original pricing[,] but not worse than *current experience*." Ex. 4 at 207:11-208:6 (emphasis added).

22

without authority (because she has none) that based on these regulatory responses, USFL was required to base the 2015 COI Rate Increase on the 2008 COI Rate Increase. Memo at PageID 1372-73. But this too is not required by the Policy. And in any case, USFL stated in its regulatory filings that it "retains complete discretion for establishing and redetermining all nonguaranteed elements." Doc. 51-4 at PageID 1580, 1584. Moreover, Plaintiff provides no evidence that she or any other class member reviewed the responses (or that they were even publicly available for review), were misled by them, or relied on the same. *See* Memo at PageID 1369; *Barasch v. Estate Info. Servs., LLC*, No. 07-CV-1693 NGG/MDG, 2009 WL 2900261, at *4 (E.D.N.Y. Sept. 3, 2009) ("[T]here is no evidence—or explanation—of the injury that Plaintiff has suffered by reading the challenged communication."). And if any class member did somehow rely on the responses, then Plaintiff is atypical as she did not read those filings. *See In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1534 (D. Mass. 1991) (noting that named plaintiff in class action "may not have seen or relied on available market information regarding the Bank at all").

    c)  <u>Modeling using one single age and sex</u>: *Plaintiff provides no such evidence; had it done so, Plaintiff would have benefited, making her an inadequate representative.*

Plaintiff argues the entire 2015 COI Rate Increase was based solely on projections relating to an age 55 male. *See* Memo at PageID 1370. However, she has no evidence that occurred. Even Mr. Stern cannot commit to opining that USFL actually based the 2015 COI Rate Increase only on a male, age 55. *See* Stern Report at PageID 1612-14, ¶¶ 100, 103 (emphasis added) (noting "*to the extent* the CBE mortality assumption in the projections comes from" the male age 55 spreadsheet, it would be improper). Given that USFL did take into account the age and sex of the policyholders, it could not have breached the Policy on that basis.[16] *See Maness v. K & A Enters. of Miss., LLC*,

---

[16] Contrary to Plaintiff's and Mr. Stern's speculation, a USFL actuary testified the "ratio of the actual deaths to the expected deaths based on pricing assumptions" take the "age and sex" of the insured into account because "[t]he actual is the actual, and it takes into account the actual sex [and other characteristics] of the insured." Ex. 5 at 245:14-21, 246:18-247:5.

250 So. 3d 402, 414 (Miss. 2018). And, Mr. Stern did not identify any quantitative consequence from the single age/single sex criticism. *See* Ex. 6 at 16:11-17:19.

Moreover, if Plaintiff had offered evidence that USFL limited its analysis, as Plaintiff contends, she would be atypical and not an adequate representative. Plaintiff would have benefitted from a COI increase based on a 55-year-old male, which was some 15 years younger than Mr. Yerger's age when the Policy was issued and *30 years* younger than Mr. Yerger's age in 2015. *Ford*, 301 F.3d at 333 ("There is also no evidence demonstrating that Ford ever received a lower payment for his services than he would have in the absence of the advertisements."). Plaintiff's single age and sex factor argument fails. *Oron*, 2019 WL 2502739, at *6.

    *d) Testing a range of increases: Testing methodology is not in the contract, and Plaintiff shows no harm.*

Also unrelated to any breach of the Policy, Mr. Stern takes issue with USFL employees internally considering COI rate increases ranging from 20% to 40%. Memo at PageID 1373-75. Having established the shortfall in profits due to the deteriorated mortality, USFL tested the COI rate increase by 20%-40%, and ultimately chose 40%. *See* Ex. 2 at 78:22-79:4; Ex. 3 at USFL 013676. Again, Plaintiff cannot explain how USFL's process to assess the increase breached the Policy, because it does not. And, of course, Plaintiff points to no harm to her from this sensitivity testing, because none could possibly exist. Because Plaintiff cannot establish breach or injury, she is atypical and inadequate. *Oron*, 2019 WL 2502739, at *6; *Alleman*, 508 F. Supp. 2d at 458-59.

    *e) Recouping past losses: Plaintiff offers no evidence that the COI Rate Increase recouped past losses or that doing so breached the contract; without evidence of harm, she is atypical and an inadequate representative.*

While Plaintiff's Motion makes much ado about recouping past losses, she presents no evidence this occurred or, if so, how USFL breached the Policy. Mr. Stern asserts that USFL is recouping past losses because "the future profits on some durations were greater than what was

assumed even at the original pricing." Memo at PageID 1373. A "duration" is a profit projection for a particular year and a particular subset of policies in the future. Ex. 5 at 190:4-7. But Plaintiff cannot tie this criticism to any Policy language. Instead, Plaintiff's Motion heavily relies on *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 464 (S.D.N.Y. 2014), including to assert that this COI rate increase is equally certifiable because the insurer sought to recoup past losses. *Fleisher*, however, involved a different policy which specifically included language stating "[w]e will not distribute past gains or recoup prior losses, if any, by changing the rates." *Id.* at 465. The Policy here has no such language. S*ee* Policy at PageID 1415-31. Thus, neither *Fleisher* nor Mr. Stern's opinion carries any weight. Because Plaintiff's breach of contract claim fails, as no Policy language is identified that was actually breached, she is atypical and inadequate to represent any class. *Alleman*, 508 F. Supp. 2d at 458-59.

Nor is Plaintiff typical or an adequate representative for such a claim because she offers no evidence that her Policy falls into one of those few durational cells. *See* Ex. 6 at 91:11-92:13; *Dallas Gay All., Inc. v. Dallas County Hosp. Dist.*, 719 F. Supp. 1380, 1389 (N.D. Tex. 1989) ("No evidence … that a named Plaintiff was injured[.]"). Nor does Plaintiff quantify the number of individuals affected by those pricing cells to demonstrate sufficient numerosity.[17] *See* Ex. 6 at 91:15-92:13; *Pilgrim*, 2010 WL 1254849, at *2; *Castellanos*, 2015 WL 13862060, at *3.

Finally, Plaintiff's "recouping past losses" theory conveniently ignores that USFL's Present Value of Future Profits on the block of policies moving forward was a ***negative*** $15 million post-increase. Thus, far from realizing greater profits than projected at pricing (as would logically be required to recoup past losses), USFL is still taking a loss even after the 2015 COI Rate

---

[17] Even if there were such evidence, it could not be based on evidence common to the class as even Plaintiff admits that only "future profits on *some* durations were greater than what was assumed [ ] at original pricing." Memo at PageID 1373 (emphasis added); *See Food Lion*, 312 F.R.D. at 487 ("[Plaintiff] must show that ***every class member*** was impacted[.]").

Increase.[18] Ex. 3 at USFL 013676; *see also* Stern Report at PageID 1623 ¶ 135 ("[T]he present value of CBE future profits with the 40% COI increase is less than the present value of . . . Original Pricing future profits[.]"). Thus, there is no common evidence of any recoupment whatsoever.

    f)  *USFL Methodology, "component approach" versus an "integrated approach":*
     *Plaintiff's actuarial methodology argument is not based in the policy, unsupported*
     *by the evidence, and could not have harmed Plaintiff.*

  Mr. Stern loosely criticizes USFL because it supposedly did not follow AXA's framework for adjusting non-guaranteed elements, like COI rates. Memo at PageID 1372. Specifically, he believes the AXA framework requires its actuaries to use what AXA calls a "component approach" as opposed to an "integrated approach" because the component approach would limit consideration to only mortality.[19] Stern Report at PageID 1618-19 ¶¶ 118-19. But how is this a breach of contract? The Policy does not state that a particular actuarial methodology must be utilized. Policy at PageID 1415-31. And failure to follow USFL's parent company's framework—which is outside the Policy—does not amount to a breach of contract. *See Gatlin*, 738 So. 2d at 251. Plaintiff offers no evidence for the Court's rigorous analysis showing how the alternative approach specifically harmed her, individually, or all class members similarly. *See* Ex. 6 at 62:14-63:6; *Ford*, 301 F.3d at 333 ("There is no evidence in the record to show that Ford's income has in fact declined any more than would be expected as a result of events completely unrelated to the HMOs' activities.").

  The Actuarial Criticisms are numerous in number but meaningless in relevance. "[L]eft with little—if any—evidence of class-wide common" injury, the court should deny class certification. *See Kondash*, 2020 WL 5816228, at *11.

---

[18] While Mr. Stern also argues that following the increase on some individual pricing cells had a higher rate of profit than originally priced, the rate of the 2015 COI Rate Increase is evaluated in the aggregate, not the individual pricing cells. *See* Ex. 3 at USFL 013676. Plaintiff cites no rule to the contrary. Memo at PageID 1373; Stern Report at PageID 1623 ¶ 135.

[19] USFL has discretion to take either approach, which Mr. Stern admits does not violate any actuarial practice. Ex. 6 at 61:1-12. In fact, Mr. Stern concedes that "there are ways that you can apply the integrated approach appropriately." *Id.* at 62:16-17.

### 3) Plaintiff's "Impermissible Factor" is not based on common—or any—evidence.

Plaintiff's third new category improperly alleges that more than mortality impacted the increase. For the first time, Plaintiff accuses USFL of allowing spread compression[20] to impact the size of the 2015 COI Rate Increase. The Policy plainly permitted USFL to raise rates so long as an increase was "based on the Insured's sex, attained age, and premium class." Policy at PageID 1426. Even if Plaintiff's allegation of spread compression were true (it is not), it would not amount to a breach of contract. Several courts have held, "when the policy says that the monthly cost of insurance rate will be 'based on' specified factors, it does not mean that the rate will be based exclusively on those factors." *Mai Nhia Thao v. Midland Nat. Life Ins. Co.*, 549 F. App'x 534, 537 (7th Cir. 2013).[21] The Policy here likewise states the COI Rate Increase will be "*based on* the Insured's sex, attained age and premium class." Policy at PageID 1426. While USFL considered just those factors, it would not have breached the Policy had it considered spread compression.

Further, Plaintiff's new theory is not based on any evidence—much less the common evidence that she must present to warrant certification—that USFL considered spread compression in exercising its discretion to increase the COI rate. Despite possessing multiple spreadsheets detailing the 2015 COI Rate Increase with hundreds of rows and dozens of tabs and retaining an actuary to review USFL's work, Plaintiff's evidence is scant. To support her Impermissible Factor

---

[20] Interest rate spread compression is the difference between the interest rate that USFL must pay policyholders on Policy account values and the interest rate that USFL can earn for itself outside the Policy through its investments. *See* Ex. 5 at 257:16-18. The Policy required USFL to use an interest rate no lower than 4%. Policy at PageID 1425. As such, the historically low interest rate environment of the last 10+ years compressed (or narrowed) the spread between the two interest components.

[21] *See also Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013) ("[N]either the dictionary definitions nor the common understanding of the phrase 'based on' suggest that Lincoln Benefit is prohibited from considering factors beyond sex, issue age, policy year, and payment class when calculating its COI rates."); *Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 900 (S.D. Ind. 2019) ("[W]here a COI provision lists factors that the insurer will consider, the insurer is not limited to considering only the factors listed."). *But see Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763-64 (8th Cir. 2020) ("[A] person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation.").

theory, Plaintiff only cites to a single line in Ms. Wen Lai's day-long deposition, which stated that spread compression was "taken into account." Ex. 5 at 260:12-17. Plaintiff, however, never asked *how* it was taken into account, whether it was isolated, and to what extent, if any, spread compression impacted the COI Rate Increase. Mr. Stern is clear that his only "evidence" is Ms. Lai's piecemeal testimony, and that he was not able "to determine what impact spread compression" had, if any. Ex. 6 at 71:23-72:8. Plaintiff's inability to offer evidence—beyond Ms. Lai's one line of testimony—showing how, if at all, spread compression impacted Plaintiff's Policy or the class as a whole, is fatal to her Motion.

Because Plaintiff's Pre-Contractual, Actuarial Criticism, and Impermissible Factor theories all fail, she is left "without evidence of a class-wide [injury], [and] there is nothing that ties the class together in order to satisfy predominance." *Kondash*, 2020 WL 5816228, at *12.

**D. Plaintiff's non-contractual claims cannot be certified because they rely on predominating, individualized issues of fact and law.**

Because Plaintiff has not pleaded her Pre-Contractual, Actuarial Criticism, and Impermissible Factor theories, USFL has no basis to know whether they are limited to her breach of contract claim or apply to her non-contractual claims as well. Yet, just as these theories cannot be certified under a breach of contract claim, they cannot be certified under any other claim. They further fail because Plaintiff does not show how they can survive the rigorous analysis of the individualized issues of law that will predominate over any class-wide adjudication. Because the policies were issued in every state except New York, Ex. 3 at USFL 001855, Plaintiff "ha[s] the burden of establishing that variations" of law in those 49-states, where these policies were issued,[22] "do not 'swamp any common issues.'" *In re Jackson*, 183 F.R.D. at 222-23. However, Plaintiff

---

[22] The policies stipulate that each "is subject to the laws of the state where the application was signed." Policy at PageID 1428.

performs no such analysis, as any "rigorous analysis" involving the choice of law would defeat certification. Similarly, proving Plaintiff's non-contractual claims demands individualized inquiries of elements like reliance and justification, precluding certifying claims for a breach of the implied covenant of good faith and fair dealing, conversion, or fraud.

**1) Breach of implied covenant of good faith and fair dealing claims vary across jurisdictions and inject individualized fact issues that predominate making class certification improper.**

Plaintiff's Motion fails to specifically address her claim for breach of the implied covenant of good faith and fair dealing (beyond lumping it into her contractual analysis) or demonstrate with evidence how, at all, it stands on its own, and independently survives a "rigorous analysis."

> *a) Breach of the implied covenant of good faith and fair dealings claim cannot be certified under a choice of law analysis.*

Plaintiff makes no showing that individualized issues arising from application of various states' laws will not predominate. She provides no choice of law analysis, which is telling because breach of the implied covenant of good faith and fair dealing claims materially vary throughout the United States, routinely precluding class certification. Some states, like Ohio, do not even recognize such a claim. *Kendall v. Phoenix Home Health Care Servs. Ltd.*, No. 2:15-CV-3009, 2016 WL 5871506, at *5 (S.D. Ohio Oct. 7, 2016) ("The implied duty of good faith on parties to any contract does not create the basis for an independent claim under Ohio law."); *see also Donald Marshall Berlin v. Bank of Am., N.A.*, 101 F. Supp. 3d 1, 17 (D.D.C. 2015) ("Virginia does not recognize a breach of such covenants as an independent cause of action separate from breach of contract."). Even in states that do, "not all [types of] contracts contain such a covenant." *Sateriale v. RJ Reynolds Tobacco Co.*, No. 2:09-CV-08394-CAS, 2014 WL 7338877, at *11 (C.D. Cal. Dec. 19, 2014). The elements widely vary. For instance, some states, like Florida "require[] a breach of an express term of the contract." *Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529,

547 (C.D. Cal. 2013); *see also Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 325-26 (D. Del. 2012) ("[S]ome (but not all) of the states require a plaintiff's performance under the contract (or excuse for non-performance) and/or establishment of conditions precedent."). Others do not. *See Jones v. Mississippi Institutions of Higher Learning*, 264 So. 3d 9, 20 (Miss. Ct. App. 2018) ("[N]either the Mississippi Supreme Court nor this Court has ever held that a good faith and fair dealing claim requires a breach of an express term of the contract."). States also differ "on whether intent is an element of a breach of the implied covenant claim, and, if so, what intent must be proven." *Gustafson*, 294 F.R.D. at 547 (collecting cases); *see also Yarger*, 285 F.R.D. at 325 ("The states' laws vary as to whether there is an intent element and, if so, what intent must be proven.").

Given the wide variations in such claims across multiple states, it is no surprise that "several [federal] courts . . . have denied class certification on a breach of the implied covenant" of good faith and fair dealing. *See Gustafson*, 294 F.R.D. at 547-48; *see also Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *4 (N.D. Cal. June 21, 2013) ("Adjudicating plaintiffs' claim for breach of contract and/or breach of the implied covenant of good faith and fair dealing would require applying a multitude of different state law standards[.]"). Because Plaintiff makes no showing on this critical issue, the Court cannot certify this claim.

> b) *The breach of good faith and fair dealing claim raises individualized fact issues, defeating class certification.*

Even if only Mississippi law applied, individualized issues regarding each putative class member's justified expectations would predominate. Under Mississippi law, "the implied covenant of good faith and fair dealing protects the parties' 'justified expectations' that the contract will be performed in a manner consistent with its 'agreed purpose.'" *Jones v. Mississippi Institutions of*

*Higher Learning*, 264 So. 3d 9, 21 (Miss. Ct. App. 2018) (citation omitted).[23] And, where "evidence of the parties' justified expectations would be required to establish a breach of the duty of good faith and fair dealing," "those expectations are likely to vary among members of the putative class based on, among other things, each purchaser's individual interaction with" USFL. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1032 (8th Cir. 2010).

Here, Plaintiff had no justified expectations, making her atypical and an inadequate class representative. Plaintiff did not participate in the purchase of the Policy and only served as Trustee at Mr. Yerger's direction, who never even read the Policy. Ex. 1 at 18:10-16; 33:20-34:12, 39:7-12, 40:18-21; Ex. 2 at 36:10-13, 48:4-8, 52:23-25. Because each class member must show their own "justified expectations," Plaintiff does not meet Rule 23(b)(3)'s predominance requirement.

### 2) Conversion claims vary across jurisdictions and inject individualized fact issues that predominate making class certification improper.

Plaintiff's Motion offers no analysis—much less rigorous analysis—in support of her conversion claim, which is only mentioned in one sentence of her argument. The claim is incapable of certification. Memo at PageID 1388. Like Plaintiff's implied covenant claim, her conversion claim also raises choice of law issues precluding certification. "For example, [some states] require varying levels of intent to establish a claim for conversion," while "[m]any other states do not require wrongful intent." *Webster v. LLR, Inc.*, No. 2:17CV225, 2018 WL 10230741, at *11 (W.D. Pa. Aug. 20, 2018). "Further, Massachusetts, Montana, New York, Oregon, and Pennsylvania have the additional requirement that, to prove conversion, a plaintiff must have made a demand for the property's return which the defendant refused, but other states have no such requirement." *Id.* "Importantly, the[se] differences [are] material and can be outcome determinative." *Id.* "Such

---

[23] The Court cannot certify a breach of good faith and fair dealing claim absent a breach of contract. *See Mullen v. Nationwide Mut. Ins. Co.*, No. 1:11CV351-KS-MTP, 2013 WL 228074, at *4 (S.D. Miss. Jan. 18, 2013) ("Without a breach of contract, plaintiffs' claims failed as a matter of law.").

[material] differences in the state law of conversion militate against a predominance finding." *Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co., Inc.*, No. 02-80381-CIV., 2003 WL 21146714, at *11 (S.D. Fla. May 6, 2003), *report and recommendation adopted*, No. 02-80381-CIV, 2003 WL 22097937 (S.D. Fla. Sept. 2, 2003).

Plaintiff's conversion claim is also a "clear loser" that fails on the merits. *Robinson v. Sheriff of Cook Cty.*, 167 F.3d 1155, 1158 (7th Cir. 1999). The Court's Order on USFL's motion to dismiss noted that—to survive—Plaintiff must provide evidence that any policy value was "sequestered and concerns specific identifiable funds, as opposed to a general amount due." Order at PageID 352. Despite years of discovery, Plaintiff's Motion does not—because it cannot—make this threshold showing. Here, the "cash value" is a contractual right, not tangible or specific funds. Policy at PageID 1415-313; Ex. 3 at 22:21-23:3. Because Plaintiff has no evidence that the cash value of her Policy, or of any other class member, is retained in a sequestered account, her conversion claim cannot be certified.

### 3) Plaintiff's fraud claim requires application of differing state laws and inherently devolves into individualized factual inquiries contrary to Rule 23(b)(3).

Plaintiff's Motion fails to provide any choice of law analysis and disregards varying states' laws as to fraud. For example, "some states require justifiable reliance on a misrepresentation," but "others require reasonable reliance[.]" *See Castano v. American Tobacco Co.*, 84 F.3d 734, 742 n.15 (5th Cir. 1996) (noting that while Texas and Alabama require justifiable reliance, South Carolina requires reasonable reliance for fraud claims). "States [also] impose varying standards to determine when there is a duty to disclose facts." *Id.* (collecting cases). Plaintiff's "claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted," which "generally arises only where there is a fiduciary relationship between the parties." *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049 (Miss. Ct. App. 2007). The imposition

of a fiduciary duty itself varies per state and necessarily raises individualized issues regarding the relationship of the parties. *See Casa Orlando Apts., Ltd. v. Fannie Mae,* 624 F.3d 185, 195 (5th Cir. 2010); *Chesner v. Stewart Title Guar. Co.*, No. 1:06CV00476, 2008 WL 553773, at *14 (N.D. Ohio Jan. 23, 2008). These variations in state law, which Plaintiff does not even address, render Plaintiff's fraud claim uncertifiable. *In re Am. Med. Sys.*, 75 F.3d at 1083.[24]

Moreover, "Federal Courts of Appeal, including the Sixth Circuit, have consistently refused to permit class treatment of fraud-based claims because individual issues of reliance must be resolved." *Hale v. Enerco Group, Inc.*, 288 F.R.D. 139, 148 (N.D. Ohio 2012) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998)). Plaintiff predictably argues that the fraud claim is certifiable because it is "based on uniform misrepresentations made to all members of the class[.]" Memo at PageID 1388. But where "the fraud was perpetrated upon consumers [in] a uniform fashion," predominance may "not [be] satisfied because it [is] necessary to conduct individual inquiries respecting whether a potential class member received the misrepresentation, how that misrepresentation was interpreted and whether the class member purchased the product or service for reasons wholly unrelated to the fraud." *Hale*, 288 F.R.D. at 150.

Here, the fraud claim is barely mentioned in Plaintiff's Motion; i.e., no rigorous analysis is proffered. And instead of relating to the COI Rate Increase itself, Plaintiff cabins the alleged fraud claim in the letter USFL sent "notifying [class members] that a COI increase was necessary." Memo at PageID 1388. Even if the letter could serve as a basis for a fraud claim, certification is improper under Rule 23(b)(3). Each class member must be examined to determine whether they

---

[24] If in reply, Plaintiff asks the Court to apply *only* Ohio law on behalf of the class, this would render her an inadequate representative due to her prior stipulation that Mississippi law applies. *See W. States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."). Applying the law of only one state for a nationwide class without any rigorous analysis would be inappropriate, where choice of law dictates application of multiple (49) state laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985) (reversing the judgment "insofar as it held that Kansas law was applicable to all of the transactions which it sought to adjudicate").

received a letter, whether they read it, whether they relied on it, and whether they continued to pay premiums for reasons unrelated to the alleged fraud. Plaintiff fails to make the requisite showing.

### E. Plaintiff fails to demonstrate that her remedies are certifiable.

#### 1) Plaintiff's damages model does not satisfy her burden under 23(b)(3), and Plaintiff fails to demonstrate how any class award could be administered.

While Plaintiff offers multiple theories as to how she believes the COI rate was improperly raised, she has not presented a damages analysis that delineates between any one theory and its impact on the COI rate increase. The Supreme Court has rejected class certification attempts, like this, where a movant fails to prove class-wide damages under each theory. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 36-37 (2013) (decertifying class where expert "expressly admitted that the model calculated damages resulting from 'the alleged anticompetitive conduct as a whole' and did not attribute damages to any one particular theory of anticompetitive impact."). Plaintiff must also demonstrate the superiority of a class action in administering any damage award on a class-wide basis. *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *21 (E.D.N.Y. July 18, 2013) (denying certification because plaintiff failed to prove "class-wide damages model that can be [reliably] used [for] distributing damages to putative class members.").

The time to produce evidence of a damages model is at the class certification stage, and Plaintiff has failed. Plaintiff can only offer the Court her assurance that her expert "would be able to calculate the amounts each individual policyholder has suffered." Memo at PageID 1389. But Plaintiff's damages expert expressly disclaims his capacity to identify individual class member damages, including Plaintiff because she lacks evidence. *See* Hewitt Report, Doc. ID 51-3 at PageID 1523, 1544 ¶¶ 7, 78-80.[25] In other words, if the Court certifies a class action and a jury

---

[25] While Plaintiff speculates that USFL at the flip of a switch can produce this information, it cannot, and Plaintiff fails to present the Court any evidence suggesting otherwise.

finds against USFL, Plaintiff cannot identify a formula, based on admissible evidence, to determine the damages owed to each class member, including Plaintiff. *See id.* Plaintiff cannot seek certification and then make it the Court's problem to create an appropriate damages model. Because Plaintiff's damages model for individual class members is "vague, indefinite, and unspecific" and "amounts to no damages model at all," it precludes class certification. *Ohio Pub. Employees Ret. Sys. v. Fed. Home Loan Mortgage Corp.*, No. 4:08CV0160, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018); *see also Sicav v. James Jun Wang*, No. 12 CIV. 6682 PAE, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015) ("[P]laintiffs have not shown … how damages would be calculated as to any individual purchaser.").

### 2) A declaratory/injunctive relief class under Rule 23(b)(2) is improper because Plaintiff seeks monetary damages and submits no evidence as to an injunction.

In addition to the reasons identified above, Plaintiff's declaratory class fails because Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61; *see also Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 WL 5705647, at *4 (S.D. Ohio July 15, 2004), *aff'd*, 458 F.3d 549 (6th Cir. 2006). Here, Plaintiff seeks monetary damages in the form of a refund of alleged COI overcharges on behalf of the putative class. Memo at PageID 1390. Moreover, as to any request for an injunction, Plaintiff fails to address, argue, or cite (with any specificity) any common evidence as to any permanent injunction element. *See also Berni v. Barilla S.P.A.*, 964 F.3d 141, 149 (2d Cir. 2020) (without demonstrating with evidence the factors for injunction, the court could not certify a Rule 23(b)(2) class); *Oron*, 2019 WL 2502739, at *6. Thus, a Rule 23(b)(2) class is improper.

## VI.    CONCLUSION

USFL respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2020, a true and correct copy of the foregoing was served via CM/ECF to all counsel of record.

_/s/ William B. Thomas_____
William B. Thomas