**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| VIVIAN FARRIS; trustee for WIRT ADAMS YERGER, JR. LEGACY TRUST; individually and on behalf of all those similarly situated, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 1:17-cv-417 |
| U.S. FINANCIAL LIFE INSURANCE COMPANY, | § § § | Judge: Matthew McFarland |
| Defendant, | § § | |

**DEFENDANT U.S. FINANCIAL LIFE INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, U.S. Financial Life Insurance Company ("USFL") moves this Court to dismiss Plaintiff's claims with prejudice. After adequate time for discovery, Plaintiff can proffer no evidence to support her claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraud. In support of its motion, USFL relies on the following memorandum, accompanying exhibits, as well as documents already before the Court, which are cited herein.

WHEREFORE, USFL respectfully requests that the Court enter judgment in its favor and dismiss Plaintiff's claims with prejudice and grant any other relief this Court deems appropriate.

Respectfully submitted,

*Of Counsel*:
MCDOWELL HETHERINGTON LLP
David T. McDowell*
William B. Thomas *
1001 Fannin, Suite 2700
Houston, Texas 77006
Telephone: (713) 337-5580
Telecopy: (713) 337-8850
admitted *pro hac vice*

*/s/Matthew A. Rich*_____
Matthew A. Rich (0077995)
KATZ, TELLER, BRANT & HILD
255 East Fifth Street, Suite 2400
Cincinnati, OH 45220
Telephone: (513) 721-4532
Facsimile: (513) 762-0075
*Trial Attorney for USFL*
*Signed by William B. Thomas with permission

i

# **TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT ..................................................................... 1

II. FACTUAL BACKGROUND ............................................................................. 2

    A. Mr. Yerger Directed a Trust to Purchase the Policy; Plaintiff was not involved .............. 2

    B. The Policy Permits USFL to Raise the Cost of Insurance Rate........................................ 3

    C. USFL's Mortality Expectations Are Worse that What Was Anticipated at Pricing. .......... 4

    D. Given the Deteriorating Mortality, USFL Decided to Adjust the COI Rate. .................... 6

    E. USFL Tested and Implemented a 40% COI Rate Increase................................................ 7

    F. USFL Notified Plaintiff and Regulators of the COI Rate Increase. ................................... 8

III. PROCEDURAL BACKGROUND........................................................................ 8

    A. Plaintiff alleges that the 2015 COI Rate Increase was a "Money Grab". .......................... 8

    B. The Court Largely Granted USFL's Motion to Dismiss. .................................................... 8

    C. Plaintiff Moved for Class Certification on Unpleaded Theories and Allegations. ............. 9

IV. LEGAL STANDARD........................................................................................... 9

    A. Summary Judgment Standard ........................................................................................ 9

    B. Plaintiff Cannot Rely on Unpleaded Claims to Avoid Summary Judgment. ................... 10

V. ARGUMENT ...................................................................................................... 10

    A. Plaintiff's Breach of Contract Claim Should be Dismissed as There is no Genuine
    Issue of Material Fact.......................................................................................................... 11

    B. Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Should
    be Dismissed Because it Departs from Mississippi Law and Lacks a Factual Basis. ........... 14

        1) The Implied Covenant Claim Does Not Apply to First-Party Insurance Contracts.
            .................................................................................................................... 14

        2) The Implied Covenent Claim Cannot Stand Absent a Breach of Contract.............. 15

        3) Plaintiff Cannot Offer Evidence of a Sinister Motive. ............................................ 15

        4) Plaintiff Cannot Offer Evidence of Justified Expectations..................................... 16

    C. Plaintiff's Conversion Claim Fails as a Matter of Law .................................................... 17

    D. Plaintiff's Alternative Fraud Claim Should be Dismissed Because She Fails to Present
    a Genuine Issue as to the Elements of Fraud. .................................................................... 18

        1) Plaintiff Cannot Prove a Fraudulent Misrepresentation Based on What is at Best
            a Breach of Contract ............................................................................... 19

        2) USFL Owed No Duty to Disclose, Precluding a Fraudulent Omission Theory. ...... 19

        3) Plaintiff Conceded that USFL's Representation Was Not False............................. 20

        4) Plaintiff has No Evidence that USFL Acted with Fraudulent Intent. ..................... 21

        5) Plaintiff Indisputably Did Not Rely on the Alleged Misrepresentation. ................. 21

E. Plaintiff has No Evidence to Support Her Requested Remedies, Making Summary Judgment Appropriate.................................................................................................. 22

    1)   Plaintiff Lacks Evidence of Individual Damages, Failed to Provide the Requisite Disclosure, and Relies on a Flawed Model............................................................. 22

        a)   Plaintiff's expert offers no opinion as to Plaintiff's individual damages......... 22

        b)   Plaintiff failed to disclose damages in discovery........................................... 23

        c)   Plaintiff's "All or Nothing" Damage Model is Flawed and Untethered to her Claims. ...................................................................................................... 25

    2)   Plaintiff's Prayer for Declaratory Relief is Inadequate ............................................ 26

    3)   Plaintiff Does Not Satisfy the Injunction Factors .................................................... 27

F. Plaintiff Cannot Rely on Un-Pleaded Claims to Defeat Summary Judgment .................. 27

VI. CONCLUSION ................................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*21st Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*,
    1:10CV214-HSO-JMR, 2011 WL 2692965 (S.D. Miss. July 11, 2011) ................................. 15

*Advance Trust & Life Escrow Serv., LTA v. Security Life of Denver Ins. Co.*
    No. 1:18-cv-01897-DDD-NYW, 2021 WL 62339 (D. Colo. Jan. 6, 2021) ........................... 13

*Alliston v. Omega Ins. Co.*,
    983 F. Supp. 675 (S.D. Miss. 1997) ...................................................................................... 21

*Andrew Jackson Life Ins. Co. v. Williams*,
    566 So. 2d 1172 (Miss. 1990) ............................................................................................... 14

*ASG Indus., Inc. v. United States*,
    548 F.2d 147 (6th Cir. 1977) ................................................................................................. 25

*Bailey v. Bailey*,
    724 So. 2d 335 (Miss. 1998) ................................................................................................. 16

*Baymiller v. Guarantee Mut Life Co.*,
    No. SA CV 99-1566 DOC AN, 2000 WL 1026565 (C.D. Cal. May 3, 2000) ...................... 13

*Berrylane Trading, Inc. v. Transp. Ins. Co.*,
    754 F. App'x 370 (6th Cir. 2018) ......................................................................................... 13

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*,
    596 F.3d 357 (6th Cir. 2010) ................................................................................................. 24

*Borum v. Illinois Cent. R.R., Co.*,
    13-CV-12421, 2014 WL 3845938 (E.D. Mich. Aug. 5, 2014) ............................................. 30

*Brown v. Medtronic, Inc.*,
    619 F. Supp. 2d 646 (D. Minn. 2009) .................................................................................. 12

*Bryant v. Prime Ins. Syndicate, Inc.*,
    CIVA 107CV1126-LGRHW, 2009 WL 982792 (S.D. Miss. Apr. 13, 2009) ....................... 14

*Burley v. Homeowners Warranty Corp.*,
    773 F. Supp. 844 (S.D. Miss. 1990) ............................................................................... 14, 15

*Caplinger v. Whitney Bank*,
    293 So. 3d 307 (Miss. Ct. App. 2020) .................................................................................. 15

*Chappell v. City of Cleveland*,
    585 F.3d 901 (6th Cir. 2009) ................................................................................................. 10

*Chris Albritton Const. Co., Inc. v. Pitney Bowes Inc.*,
    304 F.3d 527 (5th Cir. 2002) ................................................................................................. 21

*Coffman v. Pruco Life Ins. Co.*,
    No. 10-CV-03663 DMC MF, 2011 WL 4550152 (D.N.J. Sept. 29, 2011) ........................... 13

*Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*,
    No. 316CV00002GFVTEBA, 2017 WL 3701192 (E.D. Ky. Aug. 25, 2017) ....................... 24

*Davidson v. State Farm Fire & Cas. Co.*,
    641 F. Supp. 503 (N.D. Miss. 1986).................................................................. 14, 15

*Edwards Family P'ship, LP v. Johnson, Tr. for Cmty. Home Fin. Services Corp.*,
    3:18-CV-154-CWR-LRA, 2020 WL 5878209 (S.D. Miss. Oct. 2, 2020)............................ 18

*Edwards v. Velocity Invs., LLC*,
    1:10 CV 1798, 2011 WL 4007394 (N.D. Ohio Sept. 8, 2011) ............................................ 10

*Elchos v. Haas*,
    178 So. 3d 1183 (Miss. 2015).............................................................................. 18

*Emerman v. Fin. Commodity Investments, L.L.C.*,
    1:13CV2546, 2016 WL 231309 (N.D. Ohio Jan. 19, 2016)................................................. 26

*Essex Builders Group, Inc. v. Amerisure Ins. Co.*,
    230 F.R.D. 682 (M.D. Fla. 2005).......................................................................... 24

*First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce*,
    220 F.3d 331 (5th Cir. 2000) .............................................................................. 19

*Fleisher v. Phoenix Life Ins. Co.*,
    18 F. Supp. 3d 456 (S.D.N.Y. 2014)...................................................................... 13

*Ford Motor Co. v. Versata Software, Inc.*,
    15-11624, 2018 WL 10733561 (E.D. Mich. July 9, 2018)................................................. 25

*Frazier v. City of Chattanooga*,
    1:14-CV-128, 2015 WL 13402639 (E.D. Tenn. Mar. 3, 2015) .......................................... 27

*Frierson v. Delta Outdoor, Inc.*,
    794 So. 2d 220 (Miss. 2001)................................................................................ 25

*Frye v. S. Farm Bureau Cas. Ins. Co.*,
    915 So. 2d 486 (Miss. Ct. App. 2005) ................................................................... 15

*Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*,
    477 F. App'x 172 (5th Cir. 2012) ....................................................................... 15, 16

*Gen. Motors Acceptance Corp. v. Baymon*,
    732 So. 2d 262 (Miss. 1999)................................................................................ 15

*Gray Constr., Inc. v. Envirotech Constr. Corp.*,
    CV 5: 17-484-DCR, 2019 WL 346699 (E.D. Ky. Jan. 28, 2019)........................................ 23

*Guiffre v. Local Lodge No. 1124*,
    940 F.2d 660, 1991 WL 135576 (6th Cir. 1991) ....................................................... 11

*Harris v. Mississippi Valley State Univ.*,
    873 So. 2d 970 (Miss. 2004).............................................................................. 16

*Harrison v. Benefit Tr. Life Ins. Co.*,
    656 F. Supp. 304 (N.D. Miss. 1987)...................................................................... 14

*Hasting v. First Cmty. Mortg.*,
    3:17-CV-00989, 2018 WL 5808727 (M.D. Tenn. Nov. 6, 2018)........................................ 26

*Hazell Mach. Co. v. Shahan*,
    161 So. 2d 618 (Miss. 1964) ........................................................................ 19

*Holman v. Howard Wilson Chrysler Jeep, Inc.*,
    972 So. 2d 564 (Miss. 2008) ...................................................................... 20

*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*,
    920 F. Supp. 2d 1050 (N.D. Cal. 2012) .................................................... 13

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    299 F.R.D. 555 (E.D. Tenn. 2014) ............................................................ 26

*Jones v. Mississippi Institutions of Higher Learning*,
    264 So. 3d 9 (Miss. Ct. App. 2018) .......................................................... 16

*Kmart Corp. v. Fulton Improvements, L.L.C.*,
    605 F. App'x 374 (5th Cir. 2015) .............................................................. 23

*Kollmer v. Jackson Tennessee Hosp. Co., LLC*,
    219 F. Supp. 3d 738 (W.D. Tenn. 2016) ................................................... 10

*Lady v. Jefferson Pilot Life Ins. Co.*,
    241 F. Supp. 2d 655 (S.D. Miss. 2001) .................................................... 14

*Langston v. Bigelow*,
    820 So. 2d 752 (Miss. Ct. App. 2002) ...................................................... 14

*Limbert v. Mississippi Univ. for Women Alumnae Ass'n, Inc.*,
    998 So. 2d 993 (Miss. 2008) ...................................................................... 15

*Mabus v. St. James Episcopal Church*,
    13 So. 3d 260 (Miss. 2009) ........................................................................ 18

*Mai Nhia Thao v. Midland Nat. Life Ins. Co.*,
    No. 09-C-1158, 2013 WL 119871 (E.D. Wis. Jan. 9, 2013) ..................... 13

*Maness v. K & A Enterps. of Miss., LLC*,
    250 So. 3d 402 (Miss. 2018) ...................................................................... 11

*Mann Agency, LLC v. Miss. Dep't of Pub. Safety*,
    306 So. 3d 656 (Miss. 2020) ...................................................................... 16

*Marsh v. Wallace*,
    666 F. Supp. 2d 651 (S.D. Miss. Oct. 20, 2009) ...................................... 20

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................... 10

*McGee v. Swarek*,
    733 So. 2d 308 (Miss. Ct. App. 1998) ...................................................... 22

*Mossler Acceptance Co. v. Moore*,
    67 So. 2d 686 (Miss. 1953) .................................................................. 17, 18

*Mullen v. Nationwide Mut. Ins. Co.*,
    1:11CV351-KS-MTP, 2013 WL 228074 (S.D. Miss. Jan. 18, 2013) ....... 15

*N. States Power Co. v. Fed. Transit Admin.*,
358 F.3d 1050 (8th Cir. 2004) .......................................................................... 10

*Norem v. Lincoln Ben. Life Co*.,
737 F.3d 1145 (7th Cir. 2013) ....................................................................... 12, 13

*Palmer v. Orkin Exterminating Co., Inc.*,
871 F. Supp. 912 (S.D. Miss. 1994) ................................................................... 19

*Polk v. Sexton*,
613 So.2d 841 (Miss.1993) ................................................................................ 25

*RGIS LLC v. A.S.T. Inc.*,
CIV. 07-10975, 2008 WL 878908 (E.D. Mich. Mar. 28, 2008) ............................ 27

*Rogers v. O'Donnell*,
737 F.3d 1026 (6th Cir. 2013) ............................................................................ 10

*Sec. Nat. Ins. Co. v. Broadhead Bldg. Supplies, Inc.*,
2:05-CV-2104, 2006 WL 2990493 (S.D. Miss. Oct. 19, 2006) ............................ 13

*Shaffer v. Globe Prot., Inc.*,
721 F.2d 1121 (7th Cir. 1983) ............................................................................ 27

*Smith v. Orkin Exterminating Co., Inc.*,
791 F. Supp. 1137 (S.D. Miss. 1990) ................................................................. 19

*Stemler v. City of Florenc*e,
126 F.3d 856 (6th Cir. 1997) ............................................................................. 29

*Swift Fin. Corp. v. Bath Planet of Miss., LLC*,
3:15-cv-846-DPJ-FKB, 2016 WL 3180291 (S.D. Miss. June 6, 2016) ................ 18

*Taylor v. CIT Group/Sales*,
77 F.3d 477, 1995 WL 798569 (5th Cir. 1995) .................................................. 16

*Taylor v. S. Farm Bureau Cas. Co.*,
954 So. 2d 1045 (Miss. Ct. App. 2007) .............................................................. 20

*Turner v. McCullough-Hyde Mem'l Hosp.*,
1:17-CV-339, 2020 WL 5798392 (S.D. Ohio Sept. 29, 2020) ............................ 10

*Vogt v. State Farm Life Ins. Co.*,
963 F.3d 753 (8th Cir. 2020) ............................................................................. 13

*Ward v. Clark County*,
285 F. App'x 412 (9th Cir. 2008) ....................................................................... 10

*Wash. v. City of Detroit*,
05-CV-72433, 2007 WL 1827333 (E.D. Mich. June 22, 2007) ........................... 26

*Watkins v. Saemenes*,
18-2289-SHL-DKV, 2019 WL 1052041 (W.D. Tenn. Feb. 8, 2019) .................... 30

*Welsh v. Mounger*,
883 So. 2d 46 (Miss. 2004) ............................................................................... 20

*Wilson v. Gen. Motors Acceptance Corp.*,
    883 So. 2d 56 (Miss. 2004) ........................................................................ 17, 18

*Yarborough v. United States*,
    EDCV10346VAPPLA, 2013 WL 12130568 (C.D. Cal. Mar. 19, 2013) .............................. 27

*Young v. N. Mississippi Med. Ctr.*,
    783 So. 2d 661 (Miss. 2001) ............................................................................ 14

*Yue v. Conseco Life Ins. Co.*,
    282 F.R.D. 469 (C.D. Cal. 2012) ...................................................................... 13

**Rules**

FED. R. CIV. P. 26(a)(1)(iii) ............................................................................... 29

FED. R. CIV. P. 37(c)(1) ..................................................................................... 29

FED. R. CIV. P. 56 ............................................................................................. 10

# I.  SUMMARY OF THE ARGUMENT

Plaintiff has spent nearly four years pursuing a case she did not plead. Plaintiff's First Amended Complaint ("FAC") posits that USFL raised the cost of insurance ("COI") rate on Plaintiff's life insurance policy (the "Policy") as part of a fictional "money grab," intended to raid the cash value of policies belonging to putative class members. As the tale goes, such a raid was necessary to cover-up under-reserved risk associated with a failed captive reinsurance scheme. Discovery, however, revealed nothing of the sort, nor would it, as those allegations were quite literally copied and pasted from another lawsuit against a different life insurer.

Instead, the uncontroverted evidence shows that USFL's mortality experience and expectations on the block of policies in question diminished—thus justifying a COI rate increase consistent with the policies' express language. Recognizing as much, Plaintiff has since abandoned her pleaded theories and asserted, for the first time in her class certification briefing, that the COI rate increase was the result of, among other things, actuarial and underwriting sins supposedly committed some twenty years ago. Those allegations, however, are nowhere in the FAC. Plaintiff did not plead or timely disclose those—or any other new—theories, and Plaintiff cannot so casually shift the Court's focus to her new theories to avert summary judgment. After four years of litigation, USFL is entitled to summary judgment on the case that Plaintiff did bring.

When reviewing the FAC's allegations and the evidence developed to date, Plaintiff cannot raise a genuine issue of material fact on her pleaded claims, all of which are grounded in Plaintiff's theories of a "money grab," policy raids, and a captive reinsurance scheme. Specifically, Plaintiff cannot offer any evidence that USFL breached the Policy. Further, Plaintiff's breach of the duty of the implied covenant of good faith and fair dealing claim does not apply to first party insurance contracts and cannot stand absent a breach of contract or sinister motive. Her conversion claim fails because no identifiable funds were held in specific accounts. As for Plaintiff's claim of fraud

(in the alternative), the Court already found that USFL owed Plaintiff no duty separate from the Policy, and Plaintiff cannot raise a genuine issue of material fact as to each fraud element. Finally, even if Plaintiff could overcome the numerous shortcomings of her claims on the merits, she cannot prove entitlement to any remedy. Despite raising multiple (un-pleaded) critiques of the COI rate increase, Plaintiff still cannot identify her damages—the difference between the COI rate she should have paid versus what USFL charged. This deficiency is fatal, no matter what theory is advanced. Likewise, Plaintiff cannot demonstrate entitlement to declaratory or equitable relief.

For these reasons, USFL should be granted summary judgment as a matter of law.

## II.     FACTUAL BACKGROUND

The facts of this case, while seemingly complex, are actually quite simple. Plaintiff purchased a Policy that permitted the insurer to change the COI rate "from time to time." In 2015, USFL determined that its expected mortality experience in the future would be worse than anticipated when the product was originally priced. It raised the COI rate, but the Nova and SuperNova policies at issue are still operating at a loss, even though USFL could have justified raising the COI rate more than it previously did. The alleged "cash grab" is nothing but a fiction; the math supports the COI rate increase.

### A.  Mr. Yerger Directed a Trust to Purchase the Policy; Plaintiff Was Not Involved.

USFL issued the Policy, a flexible premium adjustable life insurance policy, to the Mary M. Yerger Irrevocable Trust on the life of Wirt Adams Yerger, a Mississippi resident, in 2001. Policy, Doc. 51-2 at PageID 1417.[1] At the time, Mr. Yerger was an owner of Ross & Yerger Insurance, where he sold all forms of insurance, including life insurance, for decades. Yerger Dep.,

---

[1] Because the majority of the documents cited herein have already been relied upon in a brief filed with the Court, USFL cites to these docket entries instead of filing the document as an exhibit to this Motion in accordance with the Court's Standing Procedures. At the Court's request, USFL will file the deposition transcripts and their exhibits in their entirety and file a motion to seal a narrowly tailored version of the transcripts and exhibits.

Doc. 53-1 at PageID 1787-88. Plaintiff Vivian Farris was not involved in the Policy's purchase. Farris Dep., Doc. 53-2 at PageID 1803, 1805-06. Policy ownership was eventually transferred to the Plaintiff Trust, for which Ms. Farris now serves as Trustee. *Id.*

### B. The Policy Permits USFL to Raise the Cost of Insurance Rate.

The Policy is a "Nova" universal life ("UL") insurance product originally priced and introduced for sale in 1999. Luber Dep., Doc. 53-3 at PageID 1841; March 16, 2015 Memorandum ("March 16th Memo"), Doc. 53-3 at PageID 1850; Lessing Dep., Doc. 53-4 at PageID 1861-62; Lai Dep., Doc. 53-5 at PageID 1874.[2] UL policies combine death benefits with a cash value component, described as a "Policy Value,"[3] which "is an amount that is defined by the nature of the contract . . . based on premiums and interest and charges." Luber Dep., Doc. 53-3 at PageID 1834. Unlike whole life or term life insurance, which require fixed periodic payments, UL policies are flexible, allowing policyholders to vary the timing and amount of their premium payments. Policy, Doc. 51-2 at PageID 1424-26. As premiums are paid, a UL policy may accumulate Policy Value, to which the insurer credits interest (in this case no less than a guaranteed 4%) and from which the insurer deducts the cost of insurance and other monthly charges. *Id.* As long as the Policy Value is sufficient to cover the monthly charges, the policy will remain in force. *Id.*

A UL policy's flexibility extends to the life insurer as well. The COI rate used to calculate the monthly COI charge is actuarially derived from numerous predictions about future events, such as anticipated mortality and interest rates. Ex. 1, Luber Declaration ¶ 5. "Adjusting the COI rate allows USFL to account for future expectations that differ from the expectations when the UL Policies were originally priced." *Id.* Given the inherent uncertainty in predicting the future, the UL

---

[2] Another policy form, the "SuperNova," made available for sale in 2001, had almost identical COI language. *See* Doc. 51-9 at PageID 1725. The Nova and SuperNova policies are collectively referred to as the "UL Policies."

[3] The Policy Value is defined on page 11 of the Policy. Policy, Doc. 51-2 at PageID 1425.

Policies permit USFL to adjust the COI rate after policy issuance. And, it says just that in the Policy.

> **Cost Of Insurance Rate**
> The cost of insurance rate is based on the Insured's sex, attained age and premium class. For the initial specified amount, we will use the premium class on the policy date. For each increase in the specified amount, we will use the premium class applicable to the increase. As a result, there may be a different cost of insurance rate for each increase.
>
> The guaranteed maximum cost of insurance rates are shown in the Table of Maximum Monthly Insurance Costs on page 5. We have the right to use cost of insurance rates that are lower than the guaranteed rates and may change the rates from time to time. Any change in the cost of insurance rates will apply uniformly to all members of the same class.

Policy, Doc. 51-2 at PageID 1424. Per the Policy, USFL could adjust the COI rate from "time to time," so long as the new rate was based on the "Insured's sex, attained age and premium class," was uniformly applied "to all members of the same class," and did not exceed the Policy's guaranteed maximum COI rate. *Id.* Mr. Yerger did not read the Policy; he admitted that "had [he] read [the Policy] he would have seen the term and the provision about the cost insurance[.]" Doc. 53-1 at PageID 1789-92. Similarly, Plaintiff did not read the Policy before it was issued, as she became the Trustee only after Mr. Yerger purchased the Policy. *See* Farris Dep., Doc. 53-2 at PageID 1803, 1805-06.

### C. USFL's Mortality Expectations Are Worse than What Was Anticipated at Pricing.

USFL periodically reviewed the profitability and mortality experience of its UL products to determine whether a COI rate adjustment was appropriate in light of future expectations. Luber Declaration ¶ 6. By 2015, USFL determined that the UL Policies had "a significant adverse mortality experience to pricing assumptions." March 9, 2015 Memorandum ("March 9th Memo"), Doc. 51-2 at PageID 1458. In other words, the actual mortality experience was worse than what was predicted when the UL Policies were originally priced. USFL reached this conclusion by comparing the actual deaths to the deaths expected (A/E) when the UL Policies were originally

priced. Luber Declaration ¶ 6; March 9th Memo, Doc. 51-2 at PageID 1458.[4] The A/E ratio for the

Nova and SuperNova products by premium class and calendar year, from 1999-2014, is below:

| Calendar Year | Pref Non-Smkr | Pref Smkr | Super Std Non-Smkr | Std Non-Smkr | Std Smkr | SubStd Non-Smkr | SubStd Smkr | Grand Total | Total excl substd |
|---|---|---|---|---|---|---|---|---|---|
| 1999 | | | 0% | 0% | 0% | | | 0% | 0% |
| 2000 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 2001 | 85% | 0% | 80% | 0% | 0% | 0% | 0% | 56% | 60% |
| 2002 | 0% | 126% | 507% | 75% | 120% | 646% | 0% | 368% | 358% |
| 2003 | 299% | 94% | 254% | 245% | 128% | 95% | 72% | 235% | 244% |
| 2004 | 526% | 285% | 256% | 119% | 232% | 141% | 0% | 236% | 243% |
| 2005 | 168% | 175% | 234% | 336% | 40% | 304% | 0% | 241% | 240% |
| 2006 | 318% | 80% | 176% | 150% | 291% | 514% | 1356% | 206% | 187% |
| 2007 | 128% | 153% | 293% | 386% | 97% | 4358% | 1615% | 420% | 289% |
| 2008 | 405% | 168% | 369% | 238% | 219% | 179% | 1334% | 325% | 325% |
| 2009 | 249% | 455% | 342% | 262% | 303% | 227% | 79% | 310% | 312% |
| 2010 | 333% | 97% | 285% | 244% | 221% | 0% | 940% | 268% | 271% |
| 2011 | 197% | 192% | 286% | 104% | 335% | 108% | 0% | 226% | 228% |
| 2012 | 305% | 512% | 288% | 306% | 105% | 83% | 219% | 287% | 290% |
| 2013 | 214% | 104% | 259% | 134% | 281% | 432% | 593% | 223% | 219% |
| 2014 | 246% | 98% | 263% | 69% | 148% | 134% | 250% | 200% | 201% |
| | | | | | | | | | |
| All | 267% | 212% | 284% | 218% | 208% | 668% | 611% | 271% | 259% |
| 3-year average | 255% | 263% | 271% | 191% | 184% | 232% | 375% | 244% | 244% |
| 6-year average | 257% | 252% | 288% | 196% | 236% | 202% | 406% | 256% | 257% |

March 9th Memo, Doc. 51-2 at PageID 1458. Whereas a 100% A/E ratio indicates no deterioration

in mortality experience from expectations at pricing, a higher ratio demonstrates just that—a

greater number of insureds died earlier than expected. Luber Declaration ¶ 6. USFL determined

that the A/E ratio was 259% excluding substandard classes—meaning that actual mortality

experience was "much worse than anticipated at pricing." *Id.*; *see also* March 9th Memo, Doc. 51-

2 at PageID 1458.[5] USFL anticipated the unfavorable A/E experience would continue into the

future. Luber Declaration ¶ 6; *see also* Ex. 2, Pfeifer Dep. at 165:22-166:5. There is no dispute

that the deaths expected was what was projected at pricing, and there is likewise no dispute that

---

[4] This does not mean, as Plaintiff pretends, that USFL takes the position that mortality in America is worse today than it was 20 years ago. It simply means that a mortality pattern was predicted at pricing, actual experience was worse than the prediction, and the experience is expected to carry forward into the future. Luber Declaration ¶ 6.
[5] Despite calculating the A/E ratio to be 259%, "USFL utilized the lower 192% mortality assumption . . . to calculate the 2015 COI Rate Increase," derived from "a broad mortality study including other modeled USFL UL business." Luber Declaration ¶ 7; March 9th Memo, Doc. 51-2 at PageID 1458-59. This produced a lower COI rate increase than if the 259% A/E ratio were used. Luber Declaration ¶ 7.

the actual deaths were just that. Accordingly, Plaintiff's liability expert, Larry Stern, concedes as he must—contrary to Plaintiff's original allegations—mortality, in fact, diminished. Stern Dep., Doc. 53-6 at PageID 1900 ("So, we have well, today that the mortality experience is a lot worse than what it was priced for…").

### D. Given the Deteriorating Mortality, USFL Decided to Adjust the COI Rate.

Due to the deterioration in mortality expectations, USFL sought "to restore future profitability closer to" that expected at pricing (or rather minimize some of its losses going forward). March 16 Memo, Doc. 53-3 at PageID 1850. USFL projected that, without any kind of COI increase, it would lose a present value of $60 million on the Nova and SuperNova policies. March 9th Memo, Doc. 51-2 at PageID 1458-59. USFL then projected what its earnings would have been going forward, all other factors being equal, if mortality occurred as predicted at the time of pricing. *Id.* at PageID 1458. USFL found that "[i]f pricing mortality (and pricing COIs) were to be used, [its] PVFP [present value of future profits] would have been $24.6M, resulting in $84.6M shortfall in current profitability versus pricing due to the change in expected mortality." March 9th Memo, Doc. 51-2 at PageID 1459.

As shown below, USFL ran the future profit models using current best estimate ("CBE") assumptions with current COI rates, CBE assumptions with a 40% COI rate increase, and original pricing mortality assumptions with original COI rates:

| USFL Nova-Supernova post tax earnings In Millions | | | |
|---|---|---|---|
| | Discounted @ 7% | | |
| | Nova | Supernova | Total |
| 1) CBE | ($37.7) | ($22.4) | ($60.0) |
| 2) CBE w/ 40% COI increase | ($10.3) | ($4.3) | ($14.6) |
| 3) Pricing Mortality and Pricing COI | $15.4 | $9.1 | $24.6 |

March 16th Memo, Doc. 51-3 at PageID 1853. The key takeaway is that, if USFL adjusted COI rates by 40%, it would reduce the present value of future losses on the UL Policies from -$60 million to -$14.6 million (still falling $39.2 million short of what was expected at pricing).

### E. USFL Tested and Implemented a 40% COI Rate Increase.

USFL's actuaries performed several sensitivity tests to analyze the reasonableness of a COI rate increase. Luber Declaration ¶ 10. For example, USFL tested a 20%, 30%, and 40% increase before settling on a 40% COI rate increase. March 9th Memo, Doc. 51-2 at PageID 1463; March 18, 2015 Memorandum ("March 18th Memo"), Doc. 51-2 at PageID 1466; Lai Dep., Doc. 53-5 at PageID 1875. USFL ran other projections to account for different scenarios, such as whether a 40% COI rate increase would be justified if future mortality experience was better than what was actually projected. *See* March 18th Memo, Doc. 51-2 at PageID 1466 ("We also tested the sensitivity of the PVFP to future mortality improvements and concluded that our action will still be justified even if mortality were to improve by 20%."). USFL also considered the impact of a possible increase in lapses and surrenders from policyholders unwilling to pay the new COI rate and found that the COI rate increase was justified even if "the surrender rate for this block [] increased by 10%[.]" *Id.* at PageID 1469. "These sensitivity tests[] confirmed that the 40% COI rate increase was reasonable and supportable." Luber Declaration ¶ 10.

On March 18, 2015, the increase was presented to the Non-Guaranteed Element Committee and Risk Management for approval. March 18, 2015 Email, Doc. 51-2 at PageID 1489. "The COI increase was approved by the NGE committee on March 19, 2015, with concurrence from Risk Management." Doc. 51-2 at PageID 1466. As noted, "[b]y raising the COI rate by 40%, USFL projected that its PVFP could improve by '$45M resulting in -$15M for the block.'" Doc. 53-3 at PageID 1850. Far from recouping past losses, as Plaintiff alleges, the Nova and Supernova polices are still expected to generate a substantial loss going forward.

**F.  USFL Notified Plaintiff and Regulators of the COI Rate Increase.**

USFL informed policyholders, including Plaintiff, of the COI rate increase. Aug. 2015 Ltr., Doc. 51-2, at PageID 1506. USFL also subsequently notified state regulators in Oregon and Arkansas, who did not object to the COI rate changes. Ex. 3, July 7, 2015 Email, at USFL 001269.

Far from any "cash grab," USFL identified the shortfall, tested, and justified the COI rate increase.

### III.  PROCEDURAL BACKGROUND

**A.  Plaintiff Alleges the 2015 COI Rate Increase Was a "Money Grab."**

Plaintiff sued USFL in 2017 alleging that the COI rate increase was improper, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and conversion. Complaint, Doc. 1 ¶¶ 220-249. The lengthy pleading laid out a conspiracy theory of alleged financial mismanagement by AXA Equitable (then USFL's parent company), claiming that the increase was a desperate "money grab" to save AXA from financial ruin due to a fictional captive reinsurance scheme, a regulatory remediation, and other losses. *Id.* ¶¶ 28, 39-211. After Plaintiff filed the FAC, which added two fraud claims, USFL moved to dismiss. Doc. 21. As the Court noted: "Plaintiff claims that the[] increase[] in COI rates [in 2015] were not based on changes in mortality experience, but rather, were a way for USFL to find new cash for the company, rid itself of near-term liabilities, and recoup prior losses." "Order," Doc. 31 at PageID 346. Plaintiff's claim then—and now—is unfounded.

**B.  The Court Largely Granted USFL's Motion to Dismiss.**

In its ruling, the Court dismissed some claims and narrowed others. *Id.* at PageID 348-59. Importantly, the Court accepted Plaintiff's concession that "Mississippi law should apply" in the event of a conflict. *Id.* at PageID 349. The Court also recognized that Plaintiff is not entitled to restitution or policy rescission under the breach of the covenant of good faith and fair dealing

claim. *Id.* at PageID 352-53. While the Court declined to dismiss the conversion claim, it noted that Plaintiff must prove that the "account is sequestered and concerns specific, identifiable funds, as opposed to a general amount due." *Id.* at PageID 352. As for the fraudulent misrepresentation/concealment claims, the Court was "unable to find that [USFL] owed [Plaintiff] a duty separate and apart from the contract" but allowed the claim to proceed in the alternative. *Id.* at PageID 356-58. However, the Court outright dismissed the misrepresentation/concealment of financial solvency claim—concluding that the "allegations that [USFL] misrepresented and/or omitted facts about its financial health" were "too vague and ambiguous as pled to establish a misrepresentation claim." *Id.* at PageID 358-59. Likewise, the Court dismissed the unjust enrichment claim. *Id.* at PageID 349-50. Plaintiff never amended the FAC.

### C. Plaintiff Moved for Class Certification on Unpleaded Theories and Allegations.

On July 15, 2020, Plaintiff moved for class certification and asserted a host of unpleaded allegations, referenced and defined as her Pre-Contractual, Actuarial Criticism, and Impermissible Factor theories in USFL's Opposition to Class Certification. Memorandum in Support of Class Certification, Doc. 51-1 at PageID 1367-75; Opposition to Class Certification, Doc. 53 at PageID 1758-60; Reply in Support of Class Certification, Doc. 55 at PageID 2002-23. Plaintiff cannot certify a class action of un-pleaded claims and therefore failed to carry her Rule 23 burden. *See id.*

## IV.    LEGAL STANDARD

### A. Summary Judgment Standard

USFL moves for summary judgment on all remaining claims. FED. R. CIV. P. 56(a). Where, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Rule 56 mandates that "[t]he court shall grant summary judgment[.]" *Id.* "To survive [USFL's] motion for summary judgment, [Plaintiff] must establish that there is a genuine issue of material fact[.]" *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio*

*Corp.*, 475 U.S. 574, 585–86 (1986). "A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law." *Turner v. McCullough-Hyde Mem'l Hosp.*, 1:17-CV-339, 2020 WL 5798392, at *4 (S.D. Ohio Sept. 29, 2020) (McFarland, J.) (citing *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013)). "'To make out a *genuine* issue of material fact, plaintiff must present significant probative evidence tending to support her version of the facts, *evidence* on which a reasonable jury could return a verdict for her.'" *Id.* (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009)).

### B. Plaintiff Cannot Rely on Unpleaded Claims to Avoid Summary Judgment.

Ordinarily, an abbreviated discussion as to Rule 56 is all that is necessary in a motion for summary judgment. But here, undoubtedly Plaintiff will seek to complicate the Court's analysis by referring to matters not pleaded and not disclosed until her motion for class certification, filed well after the discovery deadline. Plaintiff's dilatory tactic is not a winning strategy. "[A] party may not circumvent Rule 8's pleading requirements by asserting a new allegation in response to a motion for summary judgment." *Ward v. Clark County*, 285 F. App'x 412, 412 (9th Cir. 2008); *see also N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

On summary judgment, "[P]laintiff's claims are limited" to the allegations "that a fair reading of the complaint reveals[.]" *Edwards v. Velocity Invs., LLC*, 1:10 CV 1798, 2011 WL 4007394, at *7 (N.D. Ohio Sept. 8, 2011); *see also Kollmer v. Jackson Tennessee Hosp. Co., LLC*, 219 F. Supp. 3d 738, 746 (W.D. Tenn. 2016) ("[E]ven construing her complaint generously, there is nothing to suggest that she was proceeding under a theory that the initial drug test was a medical examination."). Unpleaded allegations "are insufficient to overcome the district court's grant of

summary judgment" when "[n]o mention of [them] appeared in the complaint." *Guiffre v. Local Lodge No. 1124,* 940 F.2d 660, 1991 WL 135576, at *5 (6th Cir. 1991). The Court's analysis is limited to comparing the evidence to what was actually pleaded. Because Plaintiff cannot submit evidence to raise a genuine issue of material fact as to her pleaded claims, USFL is entitled to summary judgment.

## V.    ARGUMENT

Plaintiff cannot raise a genuine dispute of material fact to save the claims or remedies pleaded in the FAC.

### A. Plaintiff's Breach of Contract Claim Should Be Dismissed As There Is No Genuine Issue of Material Fact.

Under Mississippi law, "[a] breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enterps. of Miss., LLC,* 250 So. 3d 402, 414 (Miss. 2018), *reh'g denied* (Aug. 9, 2018) (quotations omitted). USFL complied with the Policy, and Plaintiff lacks evidence to the contrary.

The Policy is clear and unambiguous as to USFL's right to adjust COI rates:

> **Cost Of Insurance Rate**
> The cost of insurance rate is based on the Insured's sex, attained age and premium class. For the initial specified amount, we will use the premium class on the policy date. For each increase in the specified amount, we will use the premium class applicable to the increase. As a result, there may be a different cost of insurance rate for each increase.
>
> The guaranteed maximum cost of insurance rates are shown in the Table of Maximum Monthly Insurance Costs on page 5. We have the right to use cost of insurance rates that are lower than the guaranteed rates and may change the rates from time to time. Any change in the cost of insurance rates will apply uniformly to all members of the same class.

Doc. 51-2 at PageID 1424. USFL has the contractual right to adjust the COI rate from "time to time," and Plaintiff does not allege that she is now paying a rate that exceeds the guaranteed maximum or that the new COI rates do not apply uniformly to all members of the same class.

The only remaining restriction is that the COI rate be "based on" the Insured's sex, attained

age, and premium class—all factors impacting, among other things, mortality. USFL implemented the 2015 COI rate increase because "mortality experience has continued to be worse than expected at pricing." Doc. 53-3 at PageID 1850. Accordingly, USFL increased the COI rate by "40%, subject to guaranteed maximums, to restore future profitability closer to pricing." *Id.* There was no "money grab," reinsurance scheme, or far-ranging conspiracy, as Plaintiff pleads.[6] USFL properly and conservatively increased COI rates to adjust for changes in mortality expectations. As such, the new rates, as shown herein, are "based on" the Insured's sex, attained age, and premium class.

Second, the evidence plainly shows that USFL held all factors other than mortality equal in assessing the profit shortfall resulting from the mortality deterioration. *See* Luber Declaration ¶ 8; Pfeifer Dep. at 129:11-25. Moreover, USFL used the same mortality tables used at pricing.[7] The only variant in the present value of future profit calculation was the change in mortality expectations. Luber Declaration ¶ 8; Pfeifer Dep. at 129:11-25. As such, USFL did not breach the Policy.

Finally, even if the new COI rate was "based on" factors other than just the Insured's sex, attained age, and premium class, USFL would still not be in breach. In the COI context, "based on" does not mean "exclusivity." *See Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1150 (7th Cir. 2013); *see also Advance Trust & Life Escrow Serv., LTA v. Security Life of Denver Ins. Co.*,

---

[6] Plaintiff also asserts that USFL should have raised the COI rates *sooner*. FAC ¶¶ 224(c)-(d). But if true, Plaintiff benefited—and thus could not have been harmed—by any delay in the COI increase. *Brown v. Medtronic, Inc.*, 619 F. Supp. 2d 646, 650 (D. Minn. 2009), *aff'd*, 628 F.3d 451 (8th Cir. 2010) ("Plaintiff *benefited* from the artificial inflation because he sold his shares at prices he claims were *higher* than they should have been.").

[7] While Mr. Stern is critical that over the life of these policies that USFL had at times analyzed mortality using different mortality tables, he did not take "exception" to doing so and did not make any calculation as to any effect of using a different mortality table than those used at pricing. Stern Dep., Doc. 53-6 at PageID 1903-04 ("Q: [Y]ou take exception with the company using the 75-80 with scalers at pricing and then going to the 20 ---2001 WBT in 2007 and then back to 75-80 for the 2015 redetermination. Right? A: I wouldn't say I take exception. I just didn't understand… Q: And were you able to assess whether there would have been a difference in the increase, had one table been used instead of the other? A: No, I couldn't make that determination.").

No. 1:18-cv-01897-DDD-NYW, 2021 WL 62339, at *3 (D. Colo. Jan. 6, 2021). The *Norem* Court

determined that "based on" means "a main ingredient" or "a supporting or carrying ingredient,"

not the sole ingredient. *Norem*, 737 F.3d at 1150. While a split of authority exists on this issue,[8]

the *Norem* line of cases properly interpret "based on" according to its "plain and ordinary

meaning," *Norem*, 737 F.3d at 1150, as the Court should likewise do here under Mississippi law.

*See Sec. Nat. Ins. Co. v. Broadhead Bldg. Supplies, Inc.*, 2:05-CV-2104, 2006 WL 2990493, at *3

(S.D. Miss. Oct. 19, 2006) ("In interpreting insurance contracts, Mississippi courts give policy

language its 'plain and ordinary meaning[.]'"); *see also Berrylane Trading, Inc. v. Transp. Ins.

Co.*, 754 F. App'x 370, 375 (6th Cir. 2018) ("The court 'look[s] to the plain and ordinary meaning

of the language used in the policy[.]'").

    Plaintiff incorrectly alleges in her class certification briefing that interest rate spread

compression influenced the COI rate increase. While inaccurate and contrary to the evidence, it

still would not matter. The evidence before the Court makes clear that mortality was a "main

ingredient" or a "supporting or carrying ingredient" in setting the new COI rate. As such, Plaintiff

cannot prove that USFL breached the Policy.

---

[8] *Compare Norem*, 737 F.3d at 1150 (ruling that an insurer did not breach a COI provision by considering factors not referenced in the text of the policy); *Mai Nhia Thao v. Midland Nat. Life Ins. Co.*, No. 09-C-1158, 2013 WL 119871, at *2 (E.D. Wis. Jan. 9, 2013) (rejecting reading of COI provision that an insurer may only reference mortality factors), *aff'd*, 549 F. App'x 534 (7th Cir. 2013); *Coffman v. Pruco Life Ins. Co.*, No. 10-CV-03663 DMC MF, 2011 WL 4550152, at *3-4 (D.N.J. Sept. 29, 2011) (rejecting argument that insurer cannot consider profit and other factors when determining "expected cost of mortality" charge); *Baymiller v. Guarantee Mut Life Co.*, No. SA CV 99-1566 DOC AN, 2000 WL 1026565, at *2 (C.D. Cal. May 3, 2000) (express language of insurance policies do not limit insurer to considering insured's "sex, age and rating class" where policies dictate no specific formula to calculate cost-of-insurance charges and promise only that rates will be below the guaranteed rates), *with Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763-64 (8th Cir. 2020) ("Looking at the language of the provision alone, we conclude that the phrase 'based on' is at least ambiguous because a person of ordinary intelligence purchasing an insurance policy would not read the provision and understand that where the policy states that the COI fees will be calculated 'based on' listed mortality factors that the insurer would also be free to incorporate other, unlisted factors into this calculation."); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050 (N.D. Cal. 2012); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 483 (C.D. Cal. 2012) ("No reasonable policyholder could expect the plain language of the COI provision as permitting Defendant to change the COI rate in an 'infinite' number of ways."); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 471 (S.D.N.Y. 2014) (same).

Because Plaintiff cannot raise a genuine dispute of material fact as to her pleaded theory for the breach of contract claim, summary judgment is proper.

### B. Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed Because It Departs from Mississippi Law and Lacks A Factual Basis.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed for any of the following reasons: (1) the cause of action does not apply to first-party insurance contracts, as here; (2) USFL did not breach the Policy in raising the COI rates per its terms; (3) Plaintiff can offer no evidence of a sinister motive on USFL's part; and (4) Plaintiff did not have *any* expectations, let alone *justified* expectations, regarding the COI rate increase.

### 1) The Implied Covenant Claim Does Not Apply to First-Party Insurance Contracts.

The duty of good faith and fair dealing does not apply to first-party insurance, absent a "special relationship" between the parties, of which none is alleged here. Generally, "[n]o such duty has been recognized in the context of a first-party insurance contract." *Harrison v. Benefit Tr. Life Ins. Co.*, 656 F. Supp. 304, 305 (N.D. Miss. 1987); *see also Lady v. Jefferson Pilot Life Ins. Co.*, 241 F. Supp. 2d 655, 663 (S.D. Miss. 2001) ("Mississippi imposes a duty of good faith and fair dealing upon an insurance company only when it is in the position of a liability insurer and is contractually obligated to defend its insured from suit."); *Burley v. Homeowners Warranty Corp.*, 773 F. Supp. 844, 860 (S.D. Miss. 1990), *aff'd*, 936 F.2d 569 (5th Cir. 1991); *Davidson v. State Farm Fire & Cas. Co.*, 641 F. Supp. 503, 514 (N.D. Miss. 1986).[9] Because this suit concerns a

---

[9] Plaintiff is sure to argue that "after the *Burley* decision was rendered, the Mississippi Supreme Court held that the implied covenant of good faith and fair dealing applies to every contract, including insurance contracts." *Bryant v. Prime Ins. Syndicate, Inc.*, CIVA 107CV1126-LGRHW, 2009 WL 982792, at *3 (S.D. Miss. Apr. 13, 2009) (citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172 (Miss. 1990)). But the Mississippi Supreme Court's broad pronouncement that "all contracts contain an implied duty of good faith and fair dealing" is an overstatement, as even the Mississippi Supreme Court has since noted that not *all* contracts contain the duty, such as certain employment contracts. *See Young v. N. Mississippi Med. Ctr.*, 783 So. 2d 661, 663 (Miss. 2001). Moreover, post-*Andrew Jackson*, the Mississippi Court of Appeals held that an insurer "did not breach [its] covenant of good faith and fair dealing" when the parties' "mere contractual" relationship did "not giv[e] rise to any special relationship."

first-party insurance contract, and no special or fiduciary relationship is alleged or exists between USFL and Plaintiff, no duty of good faith and fair dealing attaches. Plaintiff's claim fails.

### 2) The Implied Covenant Claim Cannot Stand Absent a Breach of Contract.

Under Mississippi law, a claim for breach of the duty of good faith and fair dealing cannot stand independent from a breach of contract. *See Mullen v. Nationwide Mut. Ins. Co.*, 1:11CV351-KS-MTP, 2013 WL 228074, at *4 (S.D. Miss. Jan. 18, 2013) ("Without a breach of contract, plaintiffs' claims failed as a matter of law.").[10] "A party has not breached the implied covenant of good faith and fair dealing when the party 'took only those actions which were duly authorized by the contract.'"[11] *Limbert v. Mississippi Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 999 (Miss. 2008) (citation omitted).[12] Here, USFL raised COI rates in accordance with Policy terms. *See* Doc. 51-2 at PageID 1426; Doc. 53-3 at PageID 1850. Thus, Plaintiff's claim for breach of the duty of bad faith and fair dealing fails.

### 3) Plaintiff Cannot Offer Evidence of a Sinister Motive.

"The breach of good faith is bad faith characterized by some conduct which violates

---

*See Langston v. Bigelow*, 820 So. 2d 752, 756-57 (Miss. Ct. App. 2002). This is precisely why the courts in *Burley* and *Davidson* concluded that "there is no implied covenant of good faith in a first-party insurance contract," because "there is no fiduciary relationship between an insurer and insured in a first-party contract[.]" *Burley*, 773 F. Supp. at 860; *see also Davidson*, 641 F. Supp. at 514 (holding Mississippi courts have "declined to impose [a duty of good faith and fair dealing] arising out of first party insurance contracts" for the same reasons they have "declined to hold that a fiduciary relationship exists between insurer and insured"). Absent a "special" or "fiduciary" relationship, of which none is alleged here, no implied covenant of good faith exists in a first-party insurance contract.

[10] *See also 21st Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*, 1:10CV214-HSO-JMR, 2011 WL 2692965, at *10 (S.D. Miss. July 11, 2011) ("[W]ithout a breach of contract, a breach of the covenant of good faith and fair dealing claim fails as a matter of law."); *Frye v. S. Farm Bureau Cas. Ins. Co.*, 915 So. 2d 486, 492 (Miss. Ct. App. 2005) ("[W]ithout a breach of contract, the trial court was correct in holding that [good faith] claim[] fail[ed] as a matter of law.").

[11] *See also Furniture & Accessory Retail Grp., Inc. v. Lane Furniture Indus., Inc.*, 477 F. App'x 172, 175 (5th Cir. 2012) ("Lane cannot violate its covenant of good faith and fair dealing by taking actions authorized by the contract."); *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999) ("in performing a contract, the parties are not prevented from 'protecting their respective economic interests' or from asserting their rights" under the contract); *Caplinger v. Whitney Bank*, 293 So. 3d 307, 312 (Miss. Ct. App. 2020) (same).

[12] *See also Limbert*, 998 So. 2d at 999 ("Dr. Limbert could not have acted in bad faith when she exercised a contractual right."); *Baymon*, 732 So. 2d at 269 ("GMAC took only those actions which were duly authorized by the contract."); *Caplinger*, 293 So. 3d at 313 ("The appellant 'could not have acted in bad faith' when she exercised her contractual right to terminate the agreement.").

standards of decency, fairness or reasonableness." *Harris v. Mississippi Valley State Univ.*, 873 So. 2d 970, 987 (Miss. 2004) (citation omitted).. "Bad faith usually involves an 'interested or sinister motive.'" *Mann Agency, LLC v. Miss. Dep't of Pub. Safety*, 306 So. 3d 656, 662 (Miss. 2020) (quoting *Bailey v. Bailey*, 724 So. 2d 335, 338 (Miss. 1998)). Here, USFL instituted the 2015 COI rate increase based on declining mortality expectations, which is not sinister—it is permitted by the contract. *Lane*, 477 F. App'x at 175. Indeed, Plaintiff's actuarial expert, Larry Stern, testified that "reasonable actuarial minds can differ on certain topics" such as "actuarial soundness." Stern Dep., Doc. 53-6, at PageID 1892. Far from a "sinister motive," Mr. Stern admits, as he must, that: "I'm not accusing . . . any of the actuaries [] of being in violation of the [American Academy of Actuaries] Code of Conduct" or of "engag[ing] in a bait and switch or actuarial magic[.]" *Id.* at PageID 1894, 1900. A difference of reasonable actuarial opinion on contractually permitted matters is not evidence of a "sinister motive."

### 4) Plaintiff Cannot Offer Evidence of Justified Expectations.

Plaintiff had no justified expectations that USFL would not and could not increase COI rates. The duty of good faith and fair dealing only "protects the parties' 'justified expectations' that the contract will be performed in a manner consistent with its 'agreed purpose.'" *Jones v. Mississippi Institutions of Higher Learning*, 264 So. 3d 9, 21 (Miss. Ct. App. 2018). Here, Plaintiff had no expectations. She was not involved in the Policy's purchase and only later served as Trustee at Mr. Yerger's direction. Doc. 53-1 at PageID 1789-91; Doc. 53-2 at PageID 1803, 1805-06.

Moreover, the expectations that Plaintiff held were not reasonably justified. Despite the Policy's terms, Plaintiff testified that she does not "think that the cost of insurance should be increased just because of what you anticipate future experience to be." Doc. 53-2 at PageID 1810. Thus, her displeasure with USFL increasing the COI rate below the guaranteed maximum cannot support a bad faith claim because her expectations were contrary to what was permitted in the

Policy. *See Taylor v. CIT Group/Sales*, 77 F.3d 477, 1995 WL 798569, at *3 (5th Cir. 1995) ("[Plaintiff] failed to submit any evidence that the parties intended that she have the right to substitute less valuable collateral, or that she had any justified expectation that she would be allowed to do so."). Mr. Yerger, who directed Plaintiff to serve as trustee, never even read the Policy, and if he had, he "would have" known "how the cost of insurance was going to be calculated" and that USFL "could jack the premium up." Doc. 53-1 at PageID 1789-92. Because Plaintiff's expectations ran contrary to the Policy's plain terms, USFL is entitled to judgment.[13]

### C. Plaintiff's Conversion Claim Fails as a Matter of Law.

The Court permitted Plaintiff's conversion claim to proceed into discovery under a very narrow issue: whether Plaintiff's allegation that the "policy value" is held in a specific account is, in fact, true. Order, Doc 31 at PageID 352. Discovery confirmed no specific account exists.

Under Mississippi law, conversion requires proof of "a wrongful possession, or the exercise of a dominion in exclusion or the defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 68 (Miss. 2004) (citation omitted). Neither intangible nor real property can be converted; rather, "[c]onversion lies only for personal property which is ***tangible***."[14] *Mossler Acceptance Co. v. Moore*, 67 So. 2d 868, 873 (Miss. 1953) (emphasis added). Absent an "obligation to return ***identical*** money . . . an action for conversion of the funds representing the

---

[13] Nor may Plaintiff rely on the other bases she alleged. FAC ¶ 230. Plaintiff has no evidence that USFL "failed to maintain adequate reserves," *id.* ¶ 230(e), nor has she adduced evidence that USFL did not timely increase the COI rate, *id.* ¶ 230(c)-(d). Her expert's testimony is that USFL "should have adjusted the [COI] rates sooner" given USFL's declining mortality experience. Ex. 4, Stern Dep. at 52:5-15. Of course, Plaintiff was not injured, and she in fact benefitted, by USFL not imposing the 2015 COI rate increase sooner because she paid *less* COI charges. *See* Doc. 53-2 at PageID 1807.

[14] *See also ABS Services, Inc. v. New York Marine & Gen. Ins. Co.*, 524 F. App'x 946, 951 (5th Cir. 2013) (citing *Mossler*, 67 So. 2d at 872); *Edwards Family P'ship, LP v. Johnson, Tr. for Cmty. Home Fin. Services Corp.*, 3:18-CV-154-CWR-LRA, 2020 WL 5878209, at *14 (S.D. Miss. Oct. 2, 2020) ("In *Mossler* . . ., the State's highest court held that "'[c]onversion lies only for personal property which is tangible.'").

indebtedness will not lie against the debtor." *Id.* (emphasis added). To be "identical money," the money must be "of a particular, identifiable fund, or funds from a specific-purpose account." *Swift Fin. Corp. v. Bath Planet of Miss., LLC*, 3:15-cv-846-DPJ-FKB, 2016 WL 3180291, at *6 (S.D. Miss. June 6, 2016).

Plaintiff cannot prove the Policy Value "is sequestered and concerns specific, identifiable funds, as opposed to a general amount due." Order at PageID 352. The Policy Value "is an amount that is defined by the nature of the contract . . . based on premiums and interest and charges." Doc. 53-3 at PageID 1834. As provided in the Policy, the "Policy Value" is determined by a mathematical formula—not by reference to a specific account. *See* Policy, Doc. 51-2 at PageID 1425. Thus, the "Policy value" is a contractual value, inapplicable to a conversion claim. *See Mossler*, 67 So. 2d at 873; *see also Edwards Family P'ship, LP v. Johnson, Tr. for Cmty. Home Fin. Services Corp.*, 3:18-CV-154-CWR-LRA, 2020 WL 5878209, at *14 (S.D. Miss. Oct. 2, 2020); *Swift Fin. Corp.*, 2016 WL 3180291, at *6.[15] Because Plaintiff has no evidence that the "policy value" is a specific, identifiable fund, her conversion claim fails.

### D. Plaintiff's Alternative Fraud Claim Should be Dismissed Because She Fails to Present a Genuine Issue as to the Elements of Fraud.

Plaintiff's only surviving fraud theory—permitted only in the alternative—claims USFL "misrepresented" that the 2015 COI rate increase was based on "future mortality expectations" while "concealing" the "true" reasons for the increase (the now discarded "money grab" theory).[16]

---

[15] Plaintiff also has no evidence to support her allegation that USFL "exerted ownership and dominion over the Plaintiffs' and Class members' personal property[.]" FAC ¶ 248. Because the 2015 COI rate increase was justified, USFL could not have exercised "wrongful possession" through Policy-defined monthly deductions from the Policy Value. *See ABS Services*, 524 F. App'x at 951; *Wilson*, 883 So. 2d at 68.

[16] The elements of fraudulent misrepresentation/concealment are nearly identical. "[A] plaintiff asserting fraudulent misrepresentation must prove the following elements, by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate

FAC ¶¶ 251, 260-61; Doc. 21 at PageID 253-54; Doc. 31 at PageID 356-58. Plaintiff's fraud claim fails because she cannot: (1) base her fraud claim on her contractual theory; (2) identify any recognized duty; (3) raise a genuine issue of material fact as to any untruthful USFL representations; (4) present evidence of USFL's intent; or (5) demonstrate reliance.

### 1) Plaintiff Cannot Prove a Fraudulent Misrepresentation Based on What Is at Best a Breach of Contract.

As the Court stated in its Order, "[u]nder Mississippi law, 'an independent tort does not arise in circumstances in which the tort claim is based solely on breach of a contractual duty.'" Doc. 31 at PageID 355 (quoting *First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 335 & n.2 (5th Cir. 2000)).[17] The Court's Order was clear—it was "unable to find that [USFL] owed [Plaintiff] a duty separate and apart from the contract." Order at PageID 357.

Here, Plaintiff's fraud claim is based on the violation of a contractual obligation, not an intentional misrepresentation or omission. *See* FAC ¶ 251 ("USFL has falsely stated to Plaintiff . . . that USFL was justifiably and lawfully increasing the COI charged to their universal life policies, based on 'future mortality expectations.'"). Thus, the wrongdoing Plaintiff "attributes to [USFL] stems directly from the duties imposed by the contract, not from any duty owed to plaintiff independent of the contract." *See Palmer v. Orkin Exterminating Co., Inc.*, 871 F. Supp. 912, 914 (S.D. Miss. 1994), *aff'd*, 71 F.3d 875 (5th Cir. 1995); *see also Smith*, 791 F. Supp. at 1144 ("Neither of these duties did the defendant owe to the plaintiff outside the contract provisions.").

---

injury." *Elchos v. Haas*, 178 So. 3d 1183, 1198 (Miss. 2015). In addition, "[i]n order for there to be liability for [fraudulent] nondisclosure, silence must relate to a material fact or matter known to the party and as to which it is his legal duty to communicate to the other contracting party. An affirmative act of concealment is necessary." *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 264 (Miss. 2009) (citation omitted).

[17] *See also Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 623 (Miss. 1964) ("[A] mere matter of contract cannot be converted into a tort [because] a tort is distinguishable from a breach of contract[.]"); *Smith v. Orkin Exterminating Co., Inc.*, 791 F. Supp. 1137, 1143 (S.D. Miss. 1990) ("[A] mere failure to perform a contract obligation—or nonaction—gives rise to no claim in tort.").

Although the Court permitted the claim in the alternative, there is still no independent basis—after years of discovery—to permit the claim to proceed any further.

### 2) USFL Owed No Duty to Disclose, Precluding a Fraudulent Omission Theory.

"'In Mississippi, a claim of fraud by omission arises only where the defendant had a duty to disclose material facts purportedly omitted.'"[18] Order at PageID 355 (quoting *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1049–50 (Miss. Ct. App. 2007)). Because Mississippi does not recognize a duty to disclose any material facts, Plaintiff instead alleges that USFL "assumed a duty to disclose the reason for the 2015 COI increase due to partially disclosing" the basis through the August 2015 letter informing policyholders about the increase. FAC ¶ 260. But the Court has already rejected Plaintiff's argument that USFL's alleged "partial[] disclos[ure]" of the "actual reason(s)" for the 2015 COI rate increase imposed such a duty. Doc. 31 at PageID 355. As the Court concluded, "this exception to the general rule arises in the narrow context of disclosure related to a business transaction *prior* to the transaction being consummated." Order at PageID 356 (emphasis added) (citing *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564, 568 (Miss. 2008)).[19] Because the 2015 COI rate increase happened fourteen years after the Policy was issued, USFL had no duty to speak and the fraudulent concealment claim fails. *See Taylor*, 954 So. 2d at 1049.

### 3) Plaintiff Conceded that USFL's Representation Was Not False.

Next, Plaintiff alleges that USFL "falsely stated to Plaintiff . . . that USFL was justifiably and lawfully increasing the COI charged to [the Policy], based on 'future mortality expectations.'"

---

[18] As the Court recognized, "'[t]his duty generally arises only where there is a fiduciary relationship between the parties.'" Doc. 31 at PageID 355 (quoting *Taylor*, 954 So. 2d at 1049). "'The purchase of insurance is deemed to be an arms length transaction, and accordingly no fiduciary duty arises.'" *Id.* (quoting *Taylor*, 954 So. 2d at 1049). Because the parties lack a fiduciary relationship, USFL had no duty to speak. *See id.* at PageID 355–57.

[19] *See also Marsh v. Wallace*, 666 F. Supp. 2d 651, 665 (S.D. Miss. Oct. 20, 2009) (emphasis added) ("One party to a business transaction is under a duty to . . . disclose to the other *before the transaction is consummated*. . . ."); *Welsh v. Mounger*, 883 So. 2d 46, 49 (Miss. 2004) (same).

FAC ¶ 251. However, Plaintiff recently conceded that "mortality 'experience' was higher than anticipated for this block of policies in 2015[.]" Doc. 51-1 at PageID 1368. In fact, her own expert acknowledged that "[actual to expected] ratios were greater than 100% indicating actual death claims were more than anticipated when the products were priced." Stern Report, Doc. 45-5, ¶ 105.[20] Mr. Stern agreed that in "[t]he judgment of [USFL]," the 2015 COI Rate Increase was based on "adverse mortality experience." Stern Dep. at 49:8-14. Moreover, Mr. Stern believed that USFL "should have adjusted the rates . . . [s]ooner than what they did." *Id.* at 52:5-11. Because future mortality expectations had deteriorated, according to even Mr. Stern, USFL was permitted to adjust the COI. Therefore, USFL's representation that the COI rate increase was based on future mortality expectations was not false. *See* Doc. 51-2 at PageID 1426; Doc. 53-3 at PageID 1850. Thus, Plaintiff's fraud claim also fails for this independent reason. *See Alliston v. Omega Ins. Co.*, 983 F. Supp. 675, 677 (S.D. Miss. 1997).

### 4) Plaintiff Has No Evidence that USFL Acted with Fraudulent Intent.

Plaintiff cannot establish that USFL acted with fraudulent intent. Plaintiff generally alleges that USFL acted with the "intention of defrauding the Plaintiff" when it informed her that the 2015 COI rate increase resulted from deteriorating "future mortality experience." FAC ¶¶ 251, 254. USFL's intent to inform policyholders, such as Plaintiff, of the rate increase cannot itself serve as proof of *fraudulent* intent. *See Chris Albritton Const. Co., Inc. v. Pitney Bowes Inc.*, 304 F.3d 527, 532–33 (5th Cir. 2002) ("[T]he only evidence of intent demonstrates that Defendants intended to mail the ValueMAX letters . . .. The lack of fraudulent intent defeats Plaintiffs' claim[] for fraud[.]"). Moreover, there is no evidence to suggest that a USFL actuary intentionally falsified

---

[20] According to Mr. Stern, "A/E ratios measure the monitored mortality experience since products are priced. . . An A/E ratio in excess of 100% is an indication the actual death claims are greater than what would be expected based on pricing mortality." Stern Report, Doc. 48-5, ¶¶ 77–78.

the calculations to conceal a "cash grab." Quite simply, Plaintiff can point to no evidence of any USFL misrepresentation made with fraudulent intent. *See id.* USFL is entitled to judgment as a matter of law.

### 5) Plaintiff Indisputably Did Not Rely on the Alleged Misrepresentation.

Plaintiff has no evidence that she relied on USFL's representation of diminished mortality expectations. "It is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable." *McGee v. Swarek*, 733 So. 2d 308, 312 (Miss. Ct. App. 1998). Here, Plaintiff cannot raise a genuine dispute of material fact as to reliance, because she admits that when she received the letter that her first action was to "look[] for counsel." Farris Dep., Doc. 53-2 at PageID 1811. Given that she immediately sought legal advice, she did not, in fact, rely on any USFL representation. Because Plaintiff did not change her position as a result of any supposed misrepresentation, she cannot prove reliance and her claim fails as a matter of law.

### E. Plaintiff Has No Evidence to Support Her Requested Remedies, Making Summary Judgment Appropriate.

Summary judgment is appropriate on Plaintiff's requested remedies: damages, a declaration, and an injunction, because Plaintiff cannot raise a genuine issue of material fact to avoid summary judgment.

### 1) Plaintiff Lacks Evidence of Individual Damages, Failed to Provide the Requisite Disclosure, and Relies on a Flawed Model.

Plaintiff's requested remedies are subject to summary judgment for three reasons: (a) her "damages" expert failed to provide any assessment as to how she, individually, was damaged; (b) Plaintiff did not set out the reasonable COI rate that Plaintiff should have paid had USFL

purportedly charged the correct COI rate; and (c) Plaintiff failed to disclose any damage calculation during discovery.[21]

### a) Plaintiff's expert offers no opinion as to Plaintiff's individual damages.

Plaintiff's "damages" expert does not opine on *Plaintiff's* individual damages. Hewitt Report, Doc. 51-3 ¶¶ 2, 7, 47, 78-80. Instead, Mr. Hewitt's "damages calculations are based on the estimated changes of premium and COI charge amounts of individual cash flows *aggregated* by USFL, due to the COI increase, to provide the *aggregate* Class Members' damages." *Id.* ¶ 79 (emphasis added). He concedes that he has "no individual information about all of the class members" that would allow him to calculate damages for individual members of the Class, including Plaintiff. Ex. 5, Hewitt Dep. at 31:16-33:18; *see also* Hewitt Report, Doc. 51-3 ¶¶ 7, 57. Because Plaintiff cannot offer evidence of a specific sum owed, as to Plaintiff individually, summary judgment is appropriate.[22]

### b) Plaintiff failed to disclose damages in discovery.

Plaintiff cannot supplement the record with undisclosed damage calculations after discovery closes. *See Gray Constr., Inc. v. Envirotech Constr. Corp.*, CV 5: 17-484-DCR, 2019 WL 346699, at *14 (E.D. Ky. Jan. 28, 2019) (prohibiting plaintiff from presenting evidence of delay damages pursuant to Rule 37(c) when plaintiff "failed to supplement its damages calculation"). During discovery, Plaintiff maintained that she would supplement her responses and disclosures on her damages calculations but failed to do so. Ex. 6, Initial Disclosures at 3;

---

[21] *Kmart Corp. v. Fulton Improvements, L.L.C.*, 605 F. App'x 374, 376 (5th Cir. 2015) ("In Mississippi, monetary damages are not an element of a breach of contract action… Instead, monetary damages are merely a remedy for breach of contract. The only elements for a breach of contract claim are 1. The existence of a valid and binding contract; and 2. That the defendant has broken, or breached it.") (internal quotations omitted).

[22] Even Mr. Hewitt concedes that calculating damages is not so simple as rolling back the 40% increase for each policy holder and calculating the difference between what was collected versus what should have been charged. Hewitt Dep. at 112:12-16 ("A: Because we don't have all of the details and the ability to recreate the actuarial analyses that you – that your client did to show exactly how many policies were surrendered, how many lapsed, how this differed. It becomes a very complicated calculation.").

Interrogatory Responses, Doc. 53-2 at Page ID 1819-20.[23] In fact, Plaintiff did not even seek discovery on the subject until the very last day of discovery, to which USFL rightfully objected. Ex. 7, Plaintiff's Second RFPs at 5-6; Ex. 8, USFL's Objections to Plaintiff's Second RFP at 2-3. It is not USFL's burden to prove Plaintiff's damages.[24] *See Ducati*, 2017 WL 3701192, at *4.

"It is appropriate to award summary judgment based on Fed. R. Civ. P. 37 where excluding a damages calculation makes the underlying claim moot." *Id.* at *3 (citing *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369–70 (6th Cir. 2010)). "Initial Disclosure guidelines outlined in Federal Rule 26(a)(1) require that a 'party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party[.]'" *Id.* (citing FED. R. CIV. P. 26(a)(1)(iii)). Rule 37(c)(1), in turn, provides that "'[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]" *Id.* (citing FED. R. CIV. P. 37(c)(1)). Due to Plaintiff's failure to provide an amount and computation of her actual damages, she cannot now manufacture new evidence. Thus, her claims fail as a matter of law. "[B]ecause [Plaintiff] ha[s] no evidence of [damages]," the Court should "grant[] summary judgment to [USFL]." *Bessemer*, 596 F.3d at 369.

---

[23] Plaintiff's reliance on her "expert to accurately provide this [damages] information" was also improper. Initial Disclosures at 3. "It is no answer for [Plaintiff] to assert that [she] will need discovery or to consult with an expert to determine [her] losses." *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (quoting *King*, 117 F.R.D. at 5). Nor is Plaintiff excused for "continuing her investigation" into her damages. Doc. 53-2 at Page ID 1820; *Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*, No. 316CV00002GFVTEBA, 2017 WL 3701192, at *3 (E.D. Ky. Aug. 25, 2017) ("'[F]ailure to investigate fully is not an excuse[.]'").

[24] Plaintiff cannot shift her failure to procure evidence of damages to USFL. *See Mike v. Dymon, Inc.*, CIV. A. 95-2405-EEO, 1996 WL 674007, at *2 (D. Kan. Nov. 14, 1996) ("That a party has not obtained to its satisfaction discovery from its opponent or a non-party is not grounds for objection.").

### c) Plaintiff's "All or Nothing" Damage Model is Flawed and Untethered to Her Claims.

It is hornbook law that a plaintiff's damage model must attempt to place "the injured party in the position where [he] would have been but for the breach." *Frierson v. Delta Outdoor, Inc.*, 794 So. 2d 220, 225 (Miss. 2001). "It is never contemplated that the injured party be placed in a better position than he otherwise would have been in if the contract had been performed." *Polk v. Sexton*, 613 So.2d 841, 844 (Miss.1993). Here, Plaintiff presents an "all or nothing" class-wide damage model. *See* Hewitt Dep. at 103:9-9; 16-17 ("I don't know whether I could calculate based off a partial justification or not. It wasn't something I was asked to consider; "I was not asked to consider a partial COI. If there was a partial COI increase, what damages would be. It's simply something I did not address."). However, an "all or nothing" damage model is improper, where like here, Plaintiff asserts theories of liability in which purported damages fall between "all" and "nothing." *See Ford Motor Co. v. Versata Software, Inc*., 15-11624, 2018 WL 10733561, at *11 (E.D. Mich. July 9, 2018) (excluding "all or nothing" damages to support individualized theories of liability).

As noted above, Mr. Stern concedes that mortality did deteriorate, as represented. *See*, *supra*, p. 6. However, Plaintiff does not offer a competent damage model that includes any COI rate that would have been appropriately charged due to the deterioration. Because liability in this case is not "all" if Plaintiff prevails, her damage model seeks to place her in a better position than if the purported breach did not occur. As difficult as the proper analysis may be, a plaintiff cannot "sidestep" the analysis. *See ASG Indus., Inc. v. United States*, 548 F.2d 147, 154 (6th Cir. 1977) ("We are unable to accept the Review Board's belief that the measure of damages for prejudicial rates is an all-or-nothing proposition…. A potentially difficult calculation of a shipper's actual damages cannot be sidestepped by characterizing its proof as fitting into neither of two rigid

categories."). Because Plaintiff's damage model fails to address the appropriate measure of damages, summary judgment is proper. *See Emerman v. Fin. Commodity Investments, L.L.C.*, 1:13CV2546, 2016 WL 231309, at *9 (N.D. Ohio Jan. 19, 2016) (entering summary judgment, where "Plaintiffs have failed entirely to address, from a mathematical standpoint, how their damages calculations are impacted by their notional funding and management fee.").

The "all-or-nothing" problem though is only further compounded by Plaintiff's failure to tie any specific theory of liability to her damage model.[25] Although Mr. Stern opines as to several (unpleaded) reasons he believes the COI rate increase was improper, he does not opine that each theory, individually, or a combination of some with others, renders the entire COI rate increase unjustifiable. "Under each of these theories Plaintiff alleges and must establish that Defendants' conduct caused his injuries." *See Wash. v. City of Detroit*, 05-CV-72433, 2007 WL 1827333, at *3 (E.D. Mich. June 22, 2007). Because Plaintiff has no evidence as to the effect of any theory of liability on the COI rate increase, summary judgment is required.

**2) Plaintiff's Prayer for Declaratory Relief is Inadequate.**

Plaintiff's passing request for "declaratory … relief" in her prayer is insufficient and improper. FAC, Doc. 19 at PageID 211. Because "Plaintiff has not included any allegations purporting to explain, even in conclusory fashion, why declaratory relief is appropriate," declaratory relief should be denied. *See Hasting v. First Cmty. Mortg.*, 3:17-CV-00989, 2018 WL 5808727, at *1 (M.D. Tenn. Nov. 6, 2018).

---

[25] USFL objected to class certification based on Plaintiff's inadequate damages model. Opposition to Class Certification, Doc. 53 at PageID 1782–83. "Given *Comcast's* requirement that the damages model and the theory of liability match, such a model [is] problematic" to certification. *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 575 (E.D. Tenn. 2014).

### 3) Plaintiff Does Not Satisfy the Injunction Factors.

Plaintiff's "cursory, *pro forma* request for injunctive relief without any showing of irreparable harm or the lack of an adequate remedy at law" is insufficient. *See Shaffer v. Globe Prot., Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983). Even if Plaintiff could get past her conclusory allegations, "[n]either has [she] shown that [s]he will suffer irreparable harm in the absence of an injunction, or demonstrated that [s]he has satisfied any of the other criteria to obtain injunctive relief." *Yarborough v. United States*, EDCV10346VAPPLA, 2013 WL 12130568, at *1 (C.D. Cal. Mar. 19, 2013). For example, a request for an injunction should "be denied if the applicant has an adequate remedy at law." *Frazier v. City of Chattanooga*, 1:14-CV-128, 2015 WL 13402639, at *1 (E.D. Tenn. Mar. 3, 2015). Here, Plaintiff fails to establish that she lacks an adequate remedy at law; in fact, she seeks damages for each of her claims. FAC ¶¶ 225, 233, 249, 257, 266. Likewise, "Plaintiff has not presented any evidence that there is any threat of a future harm" such as a subsequent COI increase. *RGIS LLC v. A.S.T. Inc.*, CIV. 07-10975, 2008 WL 878908, at *2 (E.D. Mich. Mar. 28, 2008). Thus, her request for an injunction should be denied. *See id.*

### F. Plaintiff Cannot Rely on Un-Pleaded Claims to Defeat Summary Judgment.

As shown above, Plaintiff cannot avoid summary judgment (or obtain class certification) on the allegations encompassed in the FAC. Recognizing her plight, Plaintiff in her class certification briefing asserted a range of new allegations and theories of recovery that are nowhere to be found in either the FAC or Plaintiff's discovery responses. At summary judgment, the Federal Rules of Civil Procedure do not permit such dilatory tactics, and the Court must reject consideration of any unpleaded allegation.

The Court aptly summarized Plaintiff's lengthy pleadings: the FAC "claims that the[] increase[] in COI rates [in 2015] were not based on changes in mortality experience, but rather, were a way for USFL to find new cash for the company, rid itself of near-term liabilities, and

recoup prior losses." Order at PageID 346. However, Plaintiff has since abandoned those allegations, which were largely **_copied and pasted_** from a nearly identical lawsuit against a different life insurance company. By way of example only:

| **FAC** | **Complaint in _Dickman v. Banner Life Ins. Co._,** |
|---|---|
| "Since August 2015, USFL has systematically raided policyholder accounts, arguing that its actions are permitted by the policies' terms. In reality, USFL's offered justifications are false, and merely a guise to accomplish three objectives: (1) find new cash with which to fund the company, (2) rid itself of near-term liabilities and delay inevitable financial disaster[.]" FAC ¶ 9. | "Since September 2015, Banner has systematically raided policyholder accounts, arguing that its action is permitted by the policies' terms. In reality, the justifications offered by Banner are false, and merely a guise to accomplish two objectives: (1) find new cash with which to fund future dividends, and (2) rid itself of near-term liabilities, and delay inevitable financial disaster." _Dickman v. Banner Life Ins. Co._, 1:16-cv-00192, Doc. 1 at ¶ 9 (D. Md. Jan. 19, 2016). |

This lawsuit is—and has always been—about discovery in search of a liability theory—because, of course, Plaintiff would never find evidence of some identical alleged "cash grab" scheme. This explains why Plaintiff's class certification motion bears little resemblance to her operative pleading. Plaintiff hopes to transform her lawsuit into something entirely different than the pleaded USFL (or Banner) cash grab. Plaintiff's unpleaded allegations include suggestions of pre-contractual liability that the policies were not properly underwritten some twenty years ago,[26] an academic debate between actuaries over non-contractual conduct,[27] and suspicions that the 2015

_____

[26] The FAC contains no allegations about marketing to "impaired risks," improper underwriting, or "table shaving." _See_ FAC ¶¶ 1–266. In fact, the references to "underwriting," "unreasonable expectations," and "manipulation" in the FAC are in relation to the alleged captive reinsurance scheme and the Policy's "secondary guarantees." FAC ¶¶ 56, 64, 145, 148, 172, 181. Indeed, Plaintiff's Pre-Contractual theory conflicts with her FAC. Far from the FAC's allegation that "USFL has not experienced changes in mortality experience," FAC ¶ 27, Plaintiff now concedes that USFL _did_ suffer "worse mortality experience and projections in 2015," supposedly due to "questionable underwriting practices and [USFL's] manipulation of mortality." Reply, Doc. 55 at PageID 2007.

[27] Likewise, nowhere does the FAC critique USFL's actuaries for changing actuarial tables, using an integrated or component approach, violating Actuarial Standards of Practice, or not adhering to the COI determination procedures described in USFL's regulatory interrogatories. _See_ FAC ¶¶ 1-266. Plaintiff's repeated references in the FAC to "recouping past losses" are in relation to supposed losses caused by low interest rates, the 2008 COI rate increase, and a regulatory policy remediation. _See, e.g._, FAC ¶¶ 39, 64, 262. But Plaintiff now claims, through her

COI rate increase included an impermissible factor.[28] But then when USFL objected to certification of those unpleaded theories, Plaintiff's reply to her class certification motion eventually conceded she is "not mak[ing] a legal claim" as to the unpleaded theories. Reply, Doc. 55 at PageID 2010. For example:

| Pre-Contractual | Actuarial Criticism | Impermissible Factor |
|---|---|---|
| "Plaintiff does not claim USFL breached the contracts by table shaving or manipulating its mortality experience[.]" Doc. 55 at PageID 2007. | "Plaintiff's claim is not that USFL breached the contract by using the integrated rather than the component approach set forth in its NGE methodology." *Id.* at PageID 2008. | "Plaintiff's claims are based upon the contractual limitations in the Class Policies and USFL's misrepresentations, rather than violations of ASOPs." *Id.* at PageID 2009. |

This leaves USFL—and the Court—speculating as to what allegations Plaintiff hopes to assert at trial? Are they the allegations in the FAC, Plaintiff's motion for class certification, the reply to her class certification motion, what she may argue in opposition to this Motion, or something else? Plaintiff's parade of new allegations cannot continue through summary judgment.

Although the Federal Rules are amenable to discovery of new allegations, they are also demanding: new theories must be timely pleaded, and if necessary, leave must be requested. *See Stemler v. City of Florenc*e, 126 F.3d 856, 872 (6th Cir. 1997) ("[Plaintiff], of course, was free [but declined] to seek leave to amend her complaint . . . to raise [any] new theor[ies].") Here, Plaintiff did nothing of the sort. And her pleadings are not the only impediment to recharting a new course of liability. Plaintiff failed to disclose her new theories in her interrogatory responses

---

Motion for Class Certification, that USFL recouped past losses because "future profits on some durations were greater than what was assumed . . . at the original pricing." Memo, Doc. 51-1 at PageID 1373. This is a completely different theory absent from the FAC and not disclosed in discovery.

[28] Similarly, nowhere does the FAC allege that USFL failed to isolate "spread compression" in conducting its COI analysis. *See* FAC ¶¶ 1–266. Again, Plaintiff's reference to "record-low interest rates" that allegedly caused USFL to "reduc[e] the interest rate to the minimum guaranteed rate of 4 percent," FAC ¶ 5, is not the same as her current (and incorrect) allegation that USFL did not "attempt to isolate which portion of [its] shortfall . . . was attributed to spread compression[.]" Memo, Doc. 51-1 at PageID 1371.

and deposition and instead re-committed to the money grab theory. *See* Interrogatory Responses, Doc. 53-2 at Page ID 1823; Farris Dep., Doc. 53-2 at PageID 1808, 1812. There is no shortcut or express lane to circumvent pleading and discovery obligations by asserting new theories in opposition to summary judgment. *See Watkins v. Saemenes*, 18-2289-SHL-DKV, 2019 WL 1052041, at *5 (W.D. Tenn. Feb. 8, 2019), *report and recommendation adopted*, 2:18-CV-02289-SHLDKV, 2019 WL 1053640 (W.D. Tenn. Mar. 5, 2019) ("A plaintiff may not expand the scope of her claim in an opposition to a summary judgment motion . . . Neither may a plaintiff expand her claims to assert new theories for the first time in a response to a motion for summary judgment."). Plaintiff pleaded her case. The parties then conducted the appropriate discovery based on the pleadings. Summary judgment is then appropriately analyzed by examining the pleadings and corresponding evidence. *See* supra, pp. 10-11.

"Because [Plaintiff's] Complaint was limited" to the cash grab, policy raid, and captive reinsurance theories described above, "and did not suggest there was any other basis for her" claims, "[P]laintiff is not permitted to raise [any] new theories . . . in response to [USFL's] Motion." *See Borum v. Illinois Cent. R.R., Co*., 13-CV-12421, 2014 WL 3845938, at *8 (E.D. Mich. Aug. 5, 2014). Thus, Plaintiff cannot defeat summary judgment based on her unpleaded theories. When the reviewing the evidence against the FAC, summary judgment is warranted.

## VI.    CONCLUSION

Plaintiff cannot raise a genuine dispute of material fact to defeat summary judgment on her pleaded claims and remedies. Therefore, USFL respectfully requests that the Court grant USFL's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, a true and correct copy of the foregoing was served via CM/ECF to all counsel of record.

*/s/ William B. Thomas*
William B. Thomas